HORACE S. WHITING, Appellant, *v.* JOHN EDMUNDS et al., Respondents.

A tenant cannot by a disclaimer, or by mere words denying his landlord's title and asserting one of his own, work a forfeiture of his tenancy, or set running an adverse possession. The possession of the tenant and of his grantees and assigns is that of the landlord, and not hostile or adverse, and this is so as to a grantee who has taken a deed of the fee in ignorance of the fact that his grantor stood in the relation of tenant, the latter denying any such relation.

The possession of the tenant, thus in subordination to the title of the landlord, continues, not only during the term, but is presumed to remain unchanged until twenty years after the termination thereof and notwithstanding any claim of the tenant or his successors to a hostile title. (Code of Civil Procedure, § 373.)

To rebut this presumption and initiate an adverse holding, the tenant must do something equivalent to a surrender of possession to the landlord, and bring home to him knowledge of the adverse claim.

In an action of ejectment, it appeared that the premises in question were, in 1824, in the possession of a tenant who held under a lease from W., dated in 1823, and running for twenty years. In order to get possession, R. T., who had or claimed a title under a deed from B., employed I. to purchase the lease, which he did with the money of R. T., taking an assignment, however, in his own name. By collusion with I., and without the knowledge of the landlord, R. T. entered into possession, asserting title under the deed from B. The lease, however, was found in his possession, and he made several efforts to buy the W. title. Plaintiff claimed under deeds from the heirs of W. to C., executed in 1858 and 1859. The premises were then in the possession of grantees of G. F. T., who entered under a deed in 1846. It was admitted by defendants that R. T. "and the grantees under him have been in possession

\* \* \* and that defendant is now in possession under that (R. T.'s) claim of title." The trial court refused to submit to the jury the question as to the character of R. T.'s entry into possession, and non-suited plaintiff. *Held* error; that if R. T., when he entered in 1824, became the tenant of W., his possession and that of his grantees remained the possession of his landlord not only until the end of the term, but presumably for twenty years thereafter, *i. e.*, until 1863, and so there was no adverse possession at the time of the conveyance to C. making his deed void for champerty; and that, therefore, the question as to the character of R. T.'s possession should have been submitted to the jury.

C. deeded to G. F. T. in 1869, the latter executing a mortgage back. At that time the title under the deed of 1846 to G. F. T. was in his wife. The mortgage was assigned to plaintiff, who foreclosed the same in 1870, making the wife a party; he became the purchaser and received a referee's deed in 1874. It was claimed by defendants that the deed from C. was void for champerty. *Held,* the surrounding facts left it possible that G. F. T. was in actual possession when C.'s deed to him was given, and that he took the deed and gave back the mortgage with the knowledge and assent of his wife; and so, it could not be said, as matter of law, that said deed was void.

As to whether, conceding the deed to have been void, C.'s title did not pass to the plaintiff by estoppel, *quære.*

Where, upon the trial of a cause, it was stipulated that either party might read from the printed case in another action, "whatever was relevant to this action," and there appeared in said case a stipulation admitting certain facts, which was read without objection, *held,* that the facts must be taken as so admitted; and that the stipulation could not be rejected or disregarded on appeal.

As to what might have been the effect of a proper objection interposed in time, *quære.*

(Argued November 26, 1883 ; decided January 15, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 28, 1881, which denied a motion for a new trial, and directed judgment in favor of defendants upon an order nonsuiting plaintiff on trial.

The nature of the action and the material facts are stated in the opinion.

*H. V. Howland* for appellant. Royal Torrey is estopped from setting his own title up as a defense against the title under which he entered; and whatever estops him estops his

grantees. (*Burham* v. *Van Zandt*, 7 Barb. 91; *Phelan* v. *Kelly*, 25 Wend. 389; *Jackson* v. *Walker*, 7 Cow. 637; 3 Ad. & Ell. 188; 2 id. 17; *Failing* v. *Schenck*, 3 Hill, 344; *De-Lancy* v. *Ganong*, 5 Seld. 9.) The doctrine of forfeitures of leases by disclaimer only applies to tenancies at will or sufferance. (*De Lancy* v. *Ganong*, 5 Seld. 9.) The presumption is, that at the time the deed to Chamberlain was executed, the land was occupied under the lease and so it was not void for champerty. (*Smith* v. *Burtis*, 9 Johns. 180; *Chamberlain* v. *Edmonds*, Monroe Gen. Term, 1866; 3 R. S. [6th ed.] 476, § 86; *Crary* v. *Goodman*, 22 N. Y. 176; *Fish* v. *Fish*, 39 Barb. 513.) A fraudulent deed, or invalid deed, will not serve as a foundation of an adverse possession. (*Jackson* v. *Andrews*, 7 Wend. 152; *Jackson* v. *Hill*, 5 id. 532; *Livingston* v. *Iron Co.*, 9 id. 511; *Howard* v. *Howard*, 17 Barb. 663, 668.)

*W. F. Cogswell* for respondents. The deed from the heirs of Jacob Winchell to Chamberlain, plaintiff's grantor, was champertous and void, and obtaining the same was a misdemeanor. (2 R. S. 691, § 6; *Jackson* v. *Ketchum*, 8 Johns. 479; *Pepper* v. *Haight*, 20 Barb. 429; Tyler on Ejectment, 935.) Plaintiff was not aided by the Recording Act, his mortgage not having been recorded prior to his deed, but at the same day and hour. (1 R. S. 756, § 1.) The admissions made on the trial in which Chamberlain was plaintiff and Edmunds defendant were not admissible in this case. (*Cook* v. *Barr*, 44 N. Y. 156.)

FINCH, J. This was an action of ejectment. The plaintiff made title by showing a deed from Williams and wife to George F. Torrey, given and recorded in 1846; a mortgage by George F. Torrey to W. S. Chamberlain in 1869; an assignment of that mortgage to plaintiff in 1870; and a foreclosure of the same and referee's deed to plaintiff in 1874. He further proved a deed from Chamberlain to George F. Torrey in 1869, and rested. The plaintiff thus asserted title and possession in Williams in 1846, and at the same date in George F. Torrey as

the grantee of Williams, and also title and possession in Chamberlain as the grantor of Torrey in 1869, but proved no title or possession in either. The omission, however, was cured by the evidence of the defendants, who also asserted or conceded title and ownership in George F. Torrey as the grantee of Williams, by making his title, thus derived, the source and foundation of their own. Beginning with his conveyance from Williams, they proved a quit-claim deed from George F. Torrey to Charles H. Torrey, dated in 1847, but acknowledged and recorded in 1864; a power of attorney from Charles H. to George F., dated and acknowledged in 1849, and recorded in 1851; a deed by Charles H. through his attorney to the defendant, Betsey Torrey, dated and acknowledged in 1855, and recorded in 1869; and a lease from the defendant Betsey, to the defendant Edmunds, in 1874. The defendants then rested.

At this point of the case the title was in them. Both parties agreed upon George F. Torrey as the common source of title, and so necessarily conceded his ownership and possession. (*McBurney* v. *Cutler*, 18 Barb. 207.) But the plaintiff by his proof asserted two independent titles in George F. Torrey, the one derived from Williams in 1846, and that from Chamberlain in 1869. The first having failed him, the plaintiff entered upon a new line of proof designed to established the Torrey title of 1869, and make it paramount to the Torrey title of 1846, under which the defendants claimed. He traced Chamberlain's title to deeds from the Winchell heirs in 1858 and 1859, and gave evidence of title and possession under it earlier than 1846, in their ancestor and his grantors. It appeared, however, from the admissions of plaintiff's own witnesses, that when the Winchell heirs conveyed to Chamberlain, they were out of actual possession, as was Chamberlain himself; that the purpose was to enable Chamberlain to commence a lawsuit, and he was to pay the consideration for his deed only in case he succeeded in getting "a set of vagabonds off that was on the land." Since it stands admitted in the case that "George F. Torrey, or his grantees holding under him, have been in the possession of the premises described in the complaint from the time he received

his title under the Williams deed in 1846, to the present time," it follows that the " vagabonds " referred to were the grantees of George F. Torrey under the Williams title, the validity of which had been once asserted by the plaintiff and conceded by the defendants. The deeds from the Winchell heirs to Chamberlain, and from the latter to George F. Torrey, were therefore claimed to have been void for champerty, and the General Term so held. There would be no doubt about it, but for still another element in the evidence, and another admission, which form the final reliance of the plaintiff, and bring to the surface the exact question to be decided.

His efforts were directed to a removal of the vice of champerty from the conveyance by the Winchell heirs, and he sought to accomplish the result by connecting the George F. Torrey title, of 1846 and the possession under it with the title and possession of one Royal Torrey in 1824. On this subject the plaintiff's evidence tended to establish that Royal Torrey had a title, real or pretended, adverse to Winchell, and derived from one Bogardus, but was out of possession and could not obtain it except by some device or artifice; that at this time, in 1824, the premises were in the possession of one Orin Wellman as tenant of Winchell, under a lease dated in 1823, and running for twenty years; that Royal Torrey planned to get possession through the agency of this lease, and for that purpose employed one Ives to buy it of Wellman, which Ives did, taking the assignment in his own name, but making the purchase with Torrey's money, at his request and for his benefit; that thereupon he told Ives not to enter under the lease but let him, Torrey, enter under his deed; and accordingly Torrey entered, asserting his title under the Bogardus deed, but by collusion with Ives, who held the lease for him, and without the knowledge of the landlord; that the lease was afterward found in the possession of Torrey, who on several occasions sought to buy in the Winchell title. Upon this state of facts the plaintiff insisted that Royal Torrey's possession, and that of his grantees who succeeded him was the possession of the

landlord, and under and not adverse to the Winchell title. The general rule which forbids the tenant to dispute his landlord's title has led to some other propositions material to our inquiry which seem to have been settled. The tenant cannot by a disclaimer, or by mere words denying the landlord's title and asserting one of his own, work a forfeiture of his tenancy, or set running an adverse possession. (*De Lancey* v. *Ganong,* 9 N. Y. 1.) Where the relation of landlord and tenant has been once established, the possession of the latter and that of his grantees and assignees, is the possession of the landlord, and not hostile or adverse (*Jackson* v. *Davis,* 5 Cow. 129; *Sands* v. *Hughes,* 53 N. Y. 293); and this is true even where the grantee has taken a deed of the fee in ignorance of the fact that his grantor stood in the relation of a tenant, the latter denying any such relation. (*Jackson* v. *Scissam,* 3 Johns. 499.) The possession of the tenant in subordination to the title of the landlord continues not only during the running of the term, but is presumed to be such and to remain unchanged until twenty years after the end of the term, and notwithstanding any claim by the tenant or his successors of a hostile title. (Code, § 86; Code of Civ. Pro., § 373.) This presumption may be rebutted, but, to do so effectively and initiate an adverse holding, the tenant must surrender the possession to the landlord, or do something equivalent to that, and bring home to him knowledge of the adverse claim. (1 Washb. on Real Prop. [3d ed.] 492; *Jackson* v. *Stiles,* 1 Cow. 575; *Thayer* v. *Society of United Brethren,* 20 Penn. St. 62; *Towne* v. *Butterfield,* 97 Mass. 105.) It follows, therefore, that if Royal Torrey became the tenant of Winchell, his possession remained the possession of his landlord, not only to the end of the term in 1843, but presumably for twenty years thereafter, or until 1863, and the possession of his grantees or assignees bore the same character for the same period, in the absence of evidence sufficient to rebut the statutory presumption. If then Williams and George F. Torrey in 1846, and their grantees down to 1858 and 1859, were also the grantees of Royal Torrey and successors to his possession, they stood presumably as tenants

of the Winchell title when Chamberlain took his deed, and so that conveyance was good and not void for champerty.

But were Williams and his successors along the line of defendants' title grantees of Royal Torrey? No conveyance from the latter is shown. Between him and Williams no links of successive deeds and transferred possession are established. The difficulty would be fatal to plaintiff's theory but for an admission which appears in the printed case, and which reads, "it was here admitted by defendant's counsel that since 1824 Royal Torrey and the grantees under him have been in possession of these premises, and that defendant is now in possession under that claim of title." Since it was also admitted that from the time of the Williams deed his grantees had been in possession, it fairly follows that they were also grantees of Royal Torrey. We cannot suppose them to be other or different without making the admissions contradictory, and involving at the same time and in the same premises the co-existence of two hostile and inconsistent possessions.

But the respondent asserts that there was no such admission on the present trial; that it was made on one between Chamberlain and Edmunds tried in 1864; and got into the case through a stipulation permitting either party to read from the printed case in that action "whatever was relevant to this action." That the stipulation had this origin the appellant's counsel admits in his brief. But it was read without objection. It came into the case without any challenge of its admissibility, or its competency as proof of the fact asserted. We find it there, and so received, and have no right to reject and disregard it. (*Cook* v. *Barr*, 44 N. Y. 158.) Upon this ground in part was rested the decision in *Owen* v. *Cawley* (36 N. Y. 605–606). Evidence given on a former hearing was read on the trial. No objection was taken to its admissibility, and for that reason the court said the question could not be raised on appeal. We must, therefore, give effect to the stipulation, although not deciding what might have been the result of a proper objection interposed in time.

The consequence follows that the nonsuit granted in this

case was wrong, and the refusal to submit to the jury the question of fact as to the character of Royal Torrey's entry into possession was error, unless the decision can be sustained upon the ground that Chamberlain's deed to George F. Torrey in 1869, and after the presumption of tenancy was lost by lapse of time, was void as champertous and so the mortgage and title founded on it failed. It may be that, after 1863 when the statutory presumption no longer operated, the possession of the premises under deeds of the fee and color of title by the grantees of George F. Torrey in the year 1869 should be deemed adverse to the Winchell title, and so Chamberlain's deed to George F. Torrey in that year would prove to be void. But there is no sufficient evidence before us to raise that question. No proof shows to us who was in actual possession in 1869, except the inference from the admission that it must have been George F. Torrey, or his grantees, but which we are not specifically informed. At that date the legal title was apparently in Betsey Torrey, who was the wife of George F. On the foreclosure of her husband's mortgage to Chamberlain she was made a party defendant. The judgment-roll put in evidence is not printed in the case. We only know that as against Betsey Torrey the mortgage to Chamberlain was adjudged good to the extent of her right of dower. While we must assume that the judgment did not affect her title as owner, the surrounding facts leave it possible that George F. Torrey was in actual possession when Chamberlain's deed to him was given, and that he took the deed and gave back the mortgage with the knowledge and assent of his wife. However this may be, it is quite certain that under the peculiar state of facts existing, and the inferences capable of being drawn from them, it could not be said as matter of law that the deed of 1869 to Torrey was void. And if it was, a question might yet remain, which we need not now consider, whether Chamberlain's title did not pass to the plaintiff by estoppel.

These views of the case show that the vital question in it was the character and intent of Royal Torrey's entry and possession. That was a question of fact. (*Jackson* v. *Dobbin*, 3

Johns. 224; *Smith* v. *Burtis*, 9 id. 174.) Very much of the evidence bore upon it. It was possible for a jury to say that he ,obtained possession solely as tenant of Winchell and under the purchased lease. We give no opinion upon the subject, but the question should have gone to the jury, and plaintiff's request to go to the jury upon all the facts of the case was erroneously refused and the nonsuit improperly granted.

The judgment should be reversed and a new trial granted. costs to abide the event.

All concur, except MILLER, J., taking no part.

Judgment reversed.