THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* HORACE INMAN, Respondent.

**Tax** — invalid sale of wild or non-resident lands for unpaid taxes — curative statute (L. 1885, ch. 448) does not operate as Statute of Limitations in favor of the state unless lands are advertised pursuant to chapter 453 of Laws of 1885 — action of ejectment by the state — state must prove title — when tax is void for irregularities the record of the tax deed under the curative statute (L. 1885, ch. 448) is ineffectual to validate the title.

The curative statute (L. 1885, ch. 448) providing that all conveyances of wild or non-resident lands, sold for unpaid taxes, executed by the comptroller, or his grantees of such lands, after having been recorded for two years, shall, after six months from the enactment of the statute, be conclusive evidence of the regularity of the sale and all the proceedings prior thereto, may operate also as a Statute of Limitations; but to be effective, as such, in favor of the state, there must be an opportunity given to enforce adverse claims. The state, however, cannot be sued except by its own consent and the statute does not commence to run until such consent is given; but where the comptroller advertises such lands pursuant to section 4 of chapter 453 of the Laws of 1885, he becomes vested with the actual possession of the same so as to authorize an action to be brought against him. Where it does not appear that the comptroller has ever advertised such lands as required by said statute, the record of the tax deeds does not operate to set chapter 448 of the Laws of 1885 running as a Statute of Limitations.

Where non-resident lands sold and bid in by the state, in 1871, for unpaid taxes of previous years, were subsequently twice advertised for sale for unpaid taxes of later date, but at the second and third sales were withdrawn from public bidding and bought in by the state for the

unpaid taxes on the theory that they were already the property of the state, and it appears that the first deed transferred no title to the state, the subsequent sales were void because of the withdrawal from public competition, and, therefore, the title of the state to the lands in dispute, which must rest solely on the first tax sale, is invalid.

The fact that the defendant in an action of ejectment brought by the state to recover possession of lands sold, and bought in for unpaid taxes, gave no proof of title, nor evidence that he entered under claim of title, is immaterial, where the tax sales were void and judgment has been rendered, for that reason, in favor of defendant. It is a well-settled general rule of law that the plaintiff in ejectment must succeed on the strength of his own title, not on the weakness of the defendant's title.

Where legal title is established by neither party in an action of ejectment, the one showing the prior possession in himself or in those through whom he claims, although for a period less than that which is requisite to confer a title by adverse possession, will be deemed to have the better right. Therefore, though the defendant proves merely naked possession in himself without claim of title, it is sufficient to enable him to succeed in his defense if the plaintiff fails to prove title on its part.

Where the state proceeds, at one time, to sell lands for unpaid taxes, some of which are valid and others invalid, the title of the owner is not thereby divested, and where there is a finding of fact, sustained by the evidence, that the assessment roll of 1862, assessing the lands in question, was not verified by the assessors, and that the board of supervisors of the county in which such lands are situated, in the years 1863, 1864 and 1865, did not ascertain or extend, nor assess and levy, the taxes for those years, in the manner required and prescribed by the statute then in force, such taxes were void and the sale of the lands in question thereunder, in 1871, under which the state claims title, was, therefore, void and transferred no title.

The record of the tax deed made to the state in pursuance of the sale in 1871 is ineffectual under chapter 448 of the Laws of 1885, operating solely as a curative act, to confer title on the state. A retrospective statute may validate a tax void for failure to comply with any statutory requirement that the legislature might have originally dispensed with, but the power to validate a tax sale so as to make it effectual to transfer a title is much more limited. Where, as in this case, the proceedings are so fatally defective that no title passes, the legislature cannot transfer the property of one person to another.

*People* v. *Inman,* 130 App. Div. 892, affirmed.

(Argued December 13, 1909; decided January 4, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered

August 26, 1909, affirming a judgment in favor of defendant
entered upon the report of a referee.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Frank L. Bell* and *John K. Ward* for appellant. As the
defendant failed to show title by adverse possession his
defense failed. (*Archibald* v. *N. Y. C. & H. R. R. R. Co.*,
157 N. Y. 582; *Lewis* v. *N. Y. C. & H. R. R. R. Co.*, 162
N. Y. 220; *A. B. N. Co.* v. *N. Y. E. R. R. Co.*, 129
N. Y. 252; *Heller* v. *Cohen*, 154 N. Y. 299; *Doherty* v.
*Matsell*, 119 N. Y. 646; *Howell* v. *Leavitt*, 95 N. Y. 617;
*Deering* v. *Reilly*, 167 N. Y. 184; *Archibald* v. *N. Y.
C. & H. R. R. R. Co.*, 1 App. Div. 251.) Defendant had
no standing to attack the validity of plaintiff's tax deed.
(*Detmold* v. *Drake*, 46 N. Y. 318; *Stephens* v. *Hauser*,
39 N. Y. 302; *Croner* v. *Cowdry*, 139 N. Y. 471; *People*
v. *Francisco*, 76 App. Div. 262; *Deering* v. *Reilly*, 167
N. Y. 184; *People* v. *Turner*, 117 N. Y. 234; *Andrus*
v. *Wheeler*, 18 Misc. Rep. 646; *People* v. *Campbell*, 143
N. Y. 335; *People* v. *Ladew*, 189 N. Y. 355.) Any errors
in the assessments have been cured by subsequent legislation.
(*People* v. *Turner*, 117 N. Y. 227; *People* v. *Turner*, 145
N. Y. 451; *Meigs* v. *Roberts*, 162 N. Y. 371; *N. P. Assn.*
v. *Lloyd*, 167 N. Y. 431; *Turner* v. *New York*, 168 U. S.
90; *S. L. Co.* v. *Comptroller*, 177 U. S. 318; *People* v.
*Ladew*, 189 N. Y. 355; *S. L. Co.* v. *Roberts*, 195 N. Y. 303;
*Jackson* v. *Rowe*, 106 App. Div. 65; 191 N. Y. 512.)

*Henry V. Borst* for respondent. The tax deed of 1875 on
which plaintiff based its claim to the island in question is
void by reason of defects in the proceedings which led up to
the giving of it. (L. 1855, ch. 427, § 4; *Thompson* v. *Bur-
hans*, 61 N. Y. 52; *Westfall* v. *Preston*, 49 N. Y. 349;
*People* v. *Turner*, 117 N. Y. 227; *People* v. *Suffern*, 68 N.
Y. 321; *Bradley* v. *Ward*, 58 N. Y. 406; Black on Tax
Titles [2d ed.], §§ 228, 260; *S. L. & T. Co.* v. *Roberts*, 195

N. Y. 303; *People* v. *Hagadorn,* 104 N. Y. 516; *Poth* v. *Mayor, etc.,* 151 N. Y. 16; *Ne-ha-sa-ne Park Assn.* v. *Lloyd,* 167 N. Y. 431; *People* v. *Chapin,* 105 N. Y. 309.) The errors in the assessments and proceedings which led up to the making of plaintiff's tax deeds have not been cured by subsequent legislation. (*S. L. & T. Co.* v. *Roberts,* 195 N. Y. 303; *Halsted* v. *Silverstein,* 196 N. Y. 1; *People* v. *Ladew,* 189 N. Y. 355; *People ex rel. Millard* v. *Roberts,* 151 N. Y. 540; *Clark* v. *Kirkland,* 118 N. Y. Supp. 315.) The referee rightly held that " the defendant has sufficient interest in the premises described in the complaint to entitle him to question and attack the plaintiff's title and to defend this action." (*Staples* v. *Parker,* 41 Barb. 648; *Clason* v. *Baldwin,* 152 N. Y. 211; *People* v. *Rector, etc.,* 22 N. Y. 44; *Blunt* v. *Aiken,* 15 Wend. 522; Newell on Ejectment, 357; *Chamberlain* v. *Choles,* 35 N. Y. 477; *Mayor, etc.,* v. *Carleton,* 113 N. Y. 291; *Hill* v. *Draper,* 10 Barb. 455; *Dickinson* v. *Smith,* 25 N. Y. 103; *Jones* v. *Bland,* 116 Penn. St. 194; *Blunt* v. *Bassett,* 124 N. Y. 117.)

Cullen, Ch. J.  The action is ejectment to recover possession of a piece of land known as Pine Island, in Raquette lake, Hamilton county. The complaint is in the ordinary form, alleging that the plaintiff is the owner and entitled to the possession of the land, and that the defendant unlawfully entered thereon and withholds the possession thereof. The answer states two defenses: 1st. A general denial of plaintiff's title. 2nd. Adverse possession by the defendant for more than forty years.

In support of its title the plaintiff put in evidence three deeds from the comptroller of the state made on tax sales of property which it is claimed embrace the premises in controversy: 1. Deed dated Feb. 1, 1875, made in pursuance of a sale held in 1871 for unpaid taxes of the years 1861 to 1865, inclusive. 2. Deed dated August 10, 1881, made in pursuance of a sale held in 1877 for unpaid taxes of the years 1867 to 1869, inclusive. 3. Deed dated Oct. 31, 1884, made

pursuant to a sale held in 1881 for unpaid taxes of the years 1871 to 1873, inclusive. At the commencement of the trial the parties entered into this stipulation : " Defendant admits that he is now and has been many years in the possession of the Island or premises described in the complaint, and was so in possession of the same at the commencement of the action." The defendant gave no proof of title, nor evidence that he entered under a claim of title. The referee held that the tax sales were void and for that reason directed judgment in favor of the defendant.

We think that the certified copies of the deeds in the office of the comptroller were sufficient to show their record in the county of Hamilton, especially as when they were offered in evidence with indorsements thereon stating that they had been recorded in that county, no objection was made by the defendant that to prove the record there should have been another certificate by the county clerk. The statute (L. 1885, ch. 448) provides : " All such conveyances that have been heretofore executed by the comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located * * * shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto." This statute may operate not only as a curative statute, but also as a Statute of Limitations. (*Meigs* v. *Roberts*, 162 N. Y. 371.) But to be effective as a Statute of Limitations there must be given an opportunity to enforce adverse claims. If the deed ran to a private party the six months allowed by the statute might be sufficient, but the state cannot be sued except by its own consent. (*Sanders* v. *Saxton*, 182 N. Y. 477.) Hence the statute would not com-

mence to run until such consent was given. (*Saranac Land & Timber Co.* v. *Roberts*, 195 N. Y. 303.) We have held that under section 4 of chapter 453 of the Laws of 1885, when the comptroller advertises the lands as therein provided, he becomes vested with the actual possession of the same so as to authorize an action to be brought against him. In this case, however, it does not appear that the comptroller ever advertised the lands as required by the statute. Hence the record of the tax deeds could not operate to set the statute running as a Statute of Limitations. The efficacy of such record in curing defects will be considered later.

At the second and third tax sales the lands were withdrawn from public bidding and were bought in by the state for the unpaid taxes on the theory that they were already the property of the state. If the deed under the first tax sale conveyed title to the state, it was not necessary for the plaintiff to rely on the deeds given on the second and third sales. But if, on the contrary, the first deed transferrred no title to the state, the subsequent sales were void because of the withdrawal of the lands from public competition. (*Saranac Land & Timber Co.* v. *Roberts, supra.*) Therefore, the plaintiff's title must rest solely on the first tax sale. The referee held that sale void for defects in the imposition of the taxes for which the sale was made. The learned counsel for the appellant strenuously argues that the defendant was in no position to attack the validity of the plaintiff's deed, and many authorities are cited in support of that claim. These authorities are misunderstood. It is the general rule of law, well settled by the authority of the decided cases and of the text writers, that the plaintiff in ejectment must succeed on the strength of his own title, not on the weakness of the defendant's. (*Chamberlain* v. *Taylor*, 105 N. Y. 185; *Roberts* v. *Baumgarten*, 110 id. 380.) To this rule there are certain well-defined exceptions. The tenant may not deny the title of his landlord, that is to say, he cannot deny the title of the landlord at the time the tenant entered into possession, though he may show that the landlord subsequently has been divested of his

title. (*Hoag* v. *Hoag*, 35 N. Y. 469.) Where legal title is established by neither party, the one showing the prior possession in himself or in those through whom he claims, although for a period less than that which is requisite to confer a title by adverse possession, will be deemed to have the better right. (*Whitney* v. *Wright*, 15 Wend. 171; Tyler on Ejectment, 72; *Hunter* v. *Starin*, 26 Hun, 529.) Possession is always sufficient to recover as against a mere trespasser or intruder without title. . The plaintiff, however, does not bring its case within this exception to the general rule, for it failed to prove any prior possession in itself. The presumption of possession following the legal title which the plaintiff undoubtedly at one time had as the original owner of all the lands in this portion of the state was destroyed by proof of the deed or letters patent made by the state on August 14th, 1786, of a large tract of land embracing the premises in suit. Therefore, though the defendant proved merely naked possession in himself without claim of title, it was sufficient to enable him to succeed in his defense if the plaintiff failed to prove title on its part. The very case relied on by the learned counsel for the appellant establishes this proposition. *Wing* v. *De La Rionda* (131 N. Y. 422) was in ejectment to recover a lot of land in the city of Brooklyn. The plaintiff claimed title through a sale on the foreclosure of a mortgage given by one concededly the owner of the property. The judgment of foreclosure was rendered in 1852. In November, 1869, a sale thereunder was had and the premises bid in by one Luman B. Wing. In October, 1875, an order was made relieving Wing from his purchase. In February, 1886, the plaintiff having become the assignee of Wing's bid, an order was made vacating the previous order relieving the purchaser and directing the referee to complete the sale and make the proper conveyances thereunder. The defendant was in possession, but apparently without any claim of title. He contended that the orders in the foreclosure suit were void because one Blanco, the owner of the equity of redemption, had no notice of the application for them. Of this contention the

court said : "It would seem that a defense to this action would in that event be made out, even if the defendant did not connect himself with the rights of Blanco." The defendant further claimed that the owner of the judgment in foreclosure had made some agreement with Blanco by which on certain conditions he agreed not to enforce the decree. Of such an agreement the court held the defendant could not avail himself unless he connected his title with that of Blanco. The distinction between these two separate grounds of defense is entirely clear. The first, if well taken, destroyed the plaintiff's claim of title ; the second did not impair the legal title of the plaintiff, but merely established an equitable defense of which advantage could be taken only by Blanco or some one claiming under him.

Many defects in the imposition of the taxes for the nonpayment of which the premises were sold in 1871 were found by the referee. Of these it is only necessary to allude to two, which occurred in the taxes of two different years. When the state proceeds at one time to sell for unpaid taxes, some of which are valid and others invalid, the title of the owner is not thereby divested. (*Nehasane Park Assn.* v. *Lloyd*, 167 N. Y. 431, 433 ; *Saranac Land & Timber Co.* v. *Roberts, supra.*) The referee found that the assessment roll for the year 1862 contained no affidavit or oath of the assessors, and that "the board of supervisors of Hamilton County in the years 1863, 1864 and 1865, did not ascertain or extend nor by resolution levy the tax upon the assessment roll of the various towns in said county, nor did they ascertain or extend the tax to be levied against the taxable inhabitants of the various towns in said county, nor did said board levy the tax for the county, including the State tax for said year, upon the valuation as equalized by the board, nor did they attempt to set down in a separate column in the assessment roll of each tax district therein, the sum to be paid as a tax on the real estate in said county, including the tax sales as fixed by the comptroller." That the failure of the assessors to verify the roll rendered the tax and the sale thereon void is well

settled by authority. (*Van Rensselaer* v. *Witbeck*, 7 N. Y. 517; *Westfall* v. *Preston*, 49 id. 349; *Bellinger* v. *Gray*, 51 id. 610; *Bradley* v. *Ward*, 58 id. 401; *People ex rel. Gillies* v. *Suffern*, 68 id. 321; *Merritt* v. *Village of Portchester*, 71 id. 309; *Brevoort* v. *City of Brooklyn*, 89 id. 128.) In the last of the cases cited Judge EARL so fully reviews the earlier cases as to preclude the necessity for any discussion of the subject on our part.

That the facts found as to the action of the board of supervisors in levying the taxes of 1863, 1864 and 1865 also rendered the taxes for those years void seems to be equally well settled. In *Bellinger* v. *Gray* (*supra*) it was held that where the board of supervisors attached their warrant to the assessment roll before its completion, by inserting and extending the tax, and then delivered it to the collector with directions to collect the tax, the assessment roll and warrant were void. The same doctrine was held in *Davis* v. *Read* (65 N. Y. 566). Both these cases were decided by the Commission of Appeals. In *People* v. *Hagadorn* (104 N. Y. 516) the facts were similar to those in the case before us. There the board of supervisors fixed the ratio of tax upon the aggregate amount of valuation and without extending it, signed the roll and delivered it to the supervisor of the town with authority to complete and enter against the taxpayers the respective amounts of their tax. The tax was held void. Chief Judge RUGER, writing for the court, said: "We are quite clear that this proceeding (the mode of action of the supervisors) constituted a fatal irregularity in the proceedings to levy the taxes in question." (p. 521.) *People ex rel. Ostrander* v. *Chapin* (105 N. Y. 309) is to the same effect, and the cases of *Bellinger* v. *Gray* and *People* v. *Hagadorn* (*supra*) are cited as authority for the proposition.

There remains to be considered the question whether the record of the deed under the statute of 1885 (Ch. 448), operating solely as a curative act, was effectual to confer title on the plaintiff. It is doubtless within the power of the legislature by subsequent statutes to cure defects after a sale for

unpaid taxes has been made, as well as those in the imposition of a tax itself (*Ensign* v. *Barse,* 107 N. Y. 329), but the extent of the power is radically different in the two cases. A retrospective statute may validate a tax void for failure to comply with any statutory requirement that the legislature might have originally dispensed with, but the power to validate a tax sale so as to make it effectual to transfer a title is much more limited. Where the proceedings are so fatally defective that no title passes, the legislature cannot by a curative act transfer the property of one person to another. (*Cromwell* v. *MacLean,* 123 N. Y. 474; *Joslyn* v. *Rockwell,* 128 id. 334; *Wallace* v. *McEchron,* 176 id. 424.) In *Bellinger* v. *Gray* (*supra*) the taxpayer recovered of the collector the amount seized by him to satisfy the void tax. Suppose, instead of collecting the tax by seizing the taxpayer's money, his land had been sold to satisfy the tax, it cannot be that by subsequent legislation the taxpayer could be deprived of his land for the non-payment of a tax which he was under no obligation to pay. The same principle obtains as to the failure of the assessors to verify the tax rolls. In *Brevoort* v. *City of Brooklyn* (*supra*) and the subsequent case of *Matter of Clementi* v. *Jackson* (92 N. Y. 591) — which related to the same tax — it was held that a sale for such taxes gave no title to the purchaser.

These views dispose of this appeal. There is in the case an interesting question, whether the exception in the description in the tax deed is void for indefiniteness, or, if valid, whether the proof was sufficient to show that the land occupied by the defendant was not within the exception. Upon this question we need express no opinion.

The judgment appealed from should be affirmed, with costs.

GRAY, EDWARD T. BARTLETT, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.