THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH H. LADEW and JENNIE H. LADEW, Defendants.

(Supreme Court, Hamilton Trial Term, February, 1918.)

Ejectment — action  in — discontinuance — stipulation — evidence — title — tax sales — adverse possession — statutes.

Where the conservation commission as authorized by statute directed the attorney-general to move for leave to withdraw and discontinue an action in ejectment, a motion to strike out " on the merits " from a judgment dismissing the action entered upon the stipulation of the attorney-general will be granted.

The evidence in an action in ejectment brought by the people of the state to recover possession of two certain islands in Raquette lake, township 40, Totten and Crossfield's Purchase, Hamilton county, considered, and *held,* that as against the defendants the plaintiff, having shown title to the lands in suit under a tax deed received from the comptroller in 1875 and recorded in the county clerk's office of Hamilton county in 1877, was entitled to judgment on the grounds:

1. That defendants and their predecessor who never was in possession of said islands save as custodian for the state having admitted plaintiff's title were not at liberty now to deny it.

2. That assuming that the legal title was established in neither party the plaintiff, having shown prior possession though not sufficient in kind to ripen into title by adverse possession, will be deemed to have the better right.

3. That defendants had in nowise connected themselves with the title.

ACTION in ejectment.

Merton E. Lewis, Attorney-General, and B. H. Loucks, for People.

Snyder, Cristman & Earl, for defendants.

VAN KIRK, J.  An action in ejectment, begun in 1914, to recover the two Osprey islands in Racquette lake, township 40, Totten and Crossfield's Purchase, Hamilton county.

Two former actions were instituted in October, 1901, by the People aginst this defendant Joseph H. Ladew to recover these islands.  One only of these actions was tried.  189 N. Y. 355; reargument, 190 id. 543.  Before the referee, in the action tried, the plaintiff succeeded.  The judgment, affirmed by the Appellate Division without opinion, was reversed by the Court of Appeals and a new trial granted, but none had.  In this condition of the two cases, the parties settled and judgments were entered dismissing each of the two actions " on the merits."  The affidavits presented did not justify such judgments, the order of the court did not justify them, and the facts did not justify them, but the attorney-general stipulated for judgment on the merits.  There was at that time no record of a trial.  The conservation commission did not consent to the judgment " on the merits."  It directed the attorney-general to apply to the court for leave to withdraw and discontinue the action as authorized by section 9 of the Conservation Law (Laws of 1911, chap. 647), and by section 40, subdivision 6, of the Forest, Fish and Game Law.  These settlements, in violation of the statute, disposed of lands claimed by the state.  No one having authority to act in that behalf for the state had determined

that the state did not own the islands. The state is not estopped by the unauthorized act of the attorney-general, or any agent. The state did not renounce title. The judgments are void. *People* v. *Santa Clara Lumber Co.*, 213 N. Y. 61. The motion now made to strike out the words " on the merits " from the judgments dismissing the two former actions is granted. The cases are thus for trial. Code Civ. Pro. § 1209.

The evidence at this trial is very different from that contained in the record of the former trial. It seems unnecessary to follow out the differences in detail. The evidence here establishes the following facts:

By its original patent to Livingston the state conveyed its title of township 40, Totten and Crossfield's Purchase, which included these islands. At the tax sale of 1871, the state was the purchaser of said township and islands. It received its deed following this sale from the comptroller in 1875 and it was recorded in the clerk's office of Hamilton county in 1877. This deed was in proper form for record, and, when presented for that purpose, there was no evidence whether or not these islands were occupied at the expiration of the period of redemption and no evidence of service of notice upon an occupant is recorded with the conveyance. These lands were withdrawn from sale at the tax sales of 1877 and 1881, and the deeds following those sales are void. *People* v. *Inman*, 197 N. Y. 200. In 1851 and 1852 township 40 (with a few exceptions, which do not include these islands) was conveyed to Abner Benedict, from whom, by mesne conveyances, an undivided interest in this township, including these islands, has passed to the state; the conveyances immediately to the state being a deed by W. Seward Webb and wife, May 8, 1899, and the deeds following the Golding partition in 1909, since which dates the state has owned such undivided

interest. The islands have been known sometimes as the " Osprey islands," from a fish hawk which regularly nested there, and sometimes the " Murray islands," from "Adirondack Murray," who camped there long enough to attach his name to them. Murray was the first person who had a camp on, or in any sense occupied, the islands. He, in or about 1868, first went there and built a camp, which he occupied a part of each summer or fall till 1874, when he abandoned it. Alvah Dunning was a guide who at times worked for Murray. After Murray had built his camp, and in or about 1869, Dunning occupied the camp parts of each year during Murray's absence. Apparently he remained there winters, making it his chief camp while trapping; he had two other camps for temporary use; he raised vegetables and kept his outfit for hunting and trapping, but, until Murray abandoned the camp, he did not claim to own or have exclusive possession of the islands. After Murray's abandonment, Dunning went into permanent possession, but without any title and without any transfer from Murray or another; he then made oral claim of ownership and at times asserted his right to, and did, exclude others from the entire larger island, which contains about seventeen acres; he built an icehouse, restored the camp after it had burned, cultivated a few rods of land for a garden and harvested ice; in this manner he lived there until 1879, calling it, and making it, his home, basing his claim upon nothing else than that he had gone into possession, when no other person was there, and asserted ownership. In 1876 Verplanck Colvin, superintendent of New York State Land Survey, was at Dunning's camp. In that year, representing himself to be Dunning's attorney, he made and filed a petition, in Dunning's name, with the commissioners of the land office, in which he re-

cited that Dunning, a trapper and guide, who had long resided on an island in Raquette lake, belonging to the state, desired a permanent home and asked the commissioners to grant Dunning for fifty years, or during life, a lease of the island, not transferable, at a rental of five dollars a year. On advice of the attorney-general, this petition was denied, because the state could not lease land for a longer term than one year. Colvin made this petition after talking with Dunning and reported to Dunning the result, but he says he procured this action by officials of the state of his own motion and as a friend, without authority from Dunning, and that Dunning refused to have anything to do with it. I should hesitate to find that one then representing the state would so act without authority and when he knew, if the petition was granted, the lease would not be accepted. On October 31, 1879, Charles W. Durant, Jr., made application to the commissioners of the land office to purchase Osprey island, and in it stated: " Said Osprey island was at one time handsomely wooded, but, having been occupied successively by temporary camping parties, who had no interest in its preservation, the trees have been cut down and fires run over almost the entire island." This application was acted on and Mr. Durant was duly appointed custodian, to continue such during the pleasure of the commissioners, without compensation from the state. He accepted the appointment, went upon the island and staked out a place for his camp. He later sent men to cut the brush, but Mr. Dunning drove them away. Directly thereafter the differences between Dunning and Durant were adjusted. Mr. Durant paid $100, and received in return a memorandum in form of " a bill of sale " or " a contract for a deed." Mr. Durant built or partly built two camps or houses on the island.

Later (December, 1881) he procured a deed from Dunning, paying him $100. This deed he did not record until 1891, when he sold out to defendant Joseph H. Ladew. In December, 1882, C. W. Durant gave to W. W. Durant a power of attorney to act as his agent with reference to the island. In that month he made another application to the commissioners of the land office to purchase the island, " to which I have title from parties who occupied the same for many years." But he does not claim those parties had any title and they are presumably the same parties referred to in his former petition as temporary camping parties who had no interest in the preservation of the island. W. W. Durant knew the modern history of the islands. This application was referred to the attorney-general, who reported adversely, and thereupon the commissioners of the land office remitted the case to the legislature for action. A bill was introduced in 1884 for the relief of Charles W. Durant, which failed, and another in 1885, which likewise failed. The commissioners of the land office had the care, custody and control of the state lands. The acceptance of the appointment as custodian by Mr. Durant and his entrance and continued occupation under it, as well as his application to purchase the islands, were a recognition of the state's title. He knew of the deed to the state and took his deed from Dunning to satisfy Dunning and to avoid Dunning's opposition to his entry. Mr. Durant's entire occupation was as such custodian and at no time adverse. In 1891, C. W. Durant executed a deed of the islands to Joseph H. Ladew (not a warranty deed, except as against acts of the grantor), who then entered and has remained upon the premises until the beginning of this action. In September, 1898, the forest, fish and game commission served a notice upon Joseph

H. Ladew to vacate the premises, which he refused
to do. Both in the answer in those former actions,
verified October 27, 1902, and in the present action,
the defendants plead that Charles W. Durant had a
contract with the state to purchase these islands and
has been ready at all times to pay the agreed price
for the patent applied for; that the defendant is the
successor of Durant to this contract by his deed from
Durant and has relied upon such contract to fully
protect him in the expenditure of large sums for the
improvement and betterment of said premises; that
defendant has stood ready at all times to pay the
purchase price fixed and offers to pay into this court
such sum as the court may direct, to be deposited sub-
ject to its order.

Durant being in as custodian for the state, Ladew,
who took his deed from Durant, stood in like position.
His possession was the possesion of the state and not
hostile or adverse, and this is true even though Ladew
took his deed of the fee in ignorance of the fact that
Durant stood in the relation of custodian, and this
relation is presumed to continue for twenty years,
notwithstanding any claim by the custodian or his
successor of a hostile title. *Whiting* v. *Edmunds,* 94
N. Y. 309, 314; Code Civ. Pro. § 373. Having entered
as custodian, to initiate an adverse holding he must
have surrendered the possession of the island, or
done something equivalent to that, and bring home
to the state knowledge of his adverse claim. *Jackson*
v. *Stiles,* 1 Cow. 575; *Whiting* v. *Edmunds,* 94 N. Y.
314. Durant's acts and declarations in recognition
of the plaintiff's title while he was in possession are
competent against Ladew, his successor in title.
*Pitts* v. *Wilder,* 1 N. Y. 525; *Chadwick* v. *Fonner,* 69
id. 404; *Lyon* v. *Ricker,* 141 id. 225. And defendant's
answer setting forth an alleged contract to purchase

the islands is an admission of the state's title, and is more than an intimation that he claims no title as against the state.

. Title by adverse possession has not been acquired by Mr. Ladew or his predecessors. Dunning's possession, if at any time he held adversely, never ripened into title. That a title by adverse possession may mature, such possession must not only begin, but it must continue, adverse, uninterruptedly, for the statutory time and without any intimation that the defendant claims no title. *Brandt* v. *Ogden,* 1 Johns. 155; *DeLancey* v. *Hawkins,* 23 App. Div. 8. "A single lisp of acknowledgment by the defendant, that he claims no title, fastens a character upon his possession which makes it unavailable for ages." *Colvin* v. *Burnet,* 17 Wend. 564, 569. The presumption that the relation of state and custodian still existed continued twenty years after the termination of the tenancy. Code Civ. Pro. § 373; *Bedlow* v. *New York F. D. D. Co.,* 112 N. Y. 263. The defendant Joseph H. Ladew then never was in possession, save as custodian. At no time was his possession adverse so that it could ripen into title as against the state. Laws of 1883, chap. 13; Laws of 1885, chap. 283; *Burbank* v. *Fay,* 65 N. Y. 65, 66; *Hamlin* v. *People,* 155 App. Div. 680. The defendant therefore has no title to the islands.

As against these defendants the state has a right to recover.

(1) The defendants and their predecessor, Durant, have admitted the state's title and are not at liberty now to deny it. The tenant may not deny the title of his landlord at the time he entered into possession, nor may the custodian deny the title of the state which put him in possession. He may show that the state has been later divested of its title (*Inman Case,* 197 N. Y. 205; *Hoag* v. *Hoag,* 35 id. 471), but this he

has failed to show. No person has acquired any rights in these islands as against the state since 1879, when Durant first entered upon them. Mr. Ladew's refusal to vacate the islands upon demand of the state, on whatever claim he based that refusal, has given him no better claim to the islands than he had before that refusal. If he based his refusal upon his alleged contract to purchase, his claim is groundless, as he has no such contract with the state. After his refusal he remained in occupation as a trespasser — as a tenant — or custodian — holding over after his rights under his lease or appointment have expired. Though in occupation, his possession is a naked possession, without claim of title, and he is not in position to question the state's title under its tax deed in 1875, or its later deeds in 1899 and 1909.

(2) If we assume that legal title is established in neither party, the plaintiff may succeed, for then the party showing the prior possession in himself, though not sufficient in time to ripen into title by adverse possession, will be deemed to have the better right. *People* v. *Inman,* 197 N. Y. 200, 206. As we have seen, the state, claiming under its tax deed duly recorded, was in prior possession by its custodians, Durant and Ladew, and by its commissioners (*People ex rel. Turner* v. *Kelsey,* 180 N. Y. 24, 26) in and after 1879 continuously, and has the better right.

(3) The defendants have in nowise connected themselves with the title. The plaintiff, under the deeds of May, 1899 and 1909, is at least a tenant in common in the islands, and as such may maintain this action. One tenant in common may maintain ejectment in any case where such an action could be maintained by all. Code Civ. Pro. § 1500; *Deering* v. *Reilly,* 167 N. Y. 184. Although the Webb deed was in evidence at the former trial, it was not considered by the Court of Appeals,

because the referee had held, as Judge Bartlett said, "The defendant proved title to the island in question by adverse possession against the original owner." The Webb deed could not then be effective.

The defendants claim these deeds are void for champerty. Prior to 1909, section 260 of the Real Property Law contained this provision: "A grant of real property is absolutely void, * * * if at the time of the delivery thereof such property is in the actual possession of a person claiming under a title adverse to the grantor." It is the settled law of this state that, to avoid a deed under the statute, the adverse possession must be under a claim of some specified title, not necessarily a good title, but still a paper title as distinct from a general assertion of ownership — a title under some written instrument purporting to convey the land to the claimant, or some judgment, decree or executed process of the court. *Green* v. *Horn,* 207 N. Y. 492. When the deeds of 1899 and 1909 were delivered, the islands were not in the actual possession of any person claiming under a title adverse to that of the grantor. But, if we assume that the defendants or either of them claimed under a title adverse to the grantor of the state, defendants' claim is untenable. Under the statute the state could have instituted its action in the name of its grantor. Code Civ. Pro. § 1501. There being a number of deeds claimed to be champertous, this would delay, complicate and confuse, but it would not avoid, the issue. In 1910 this statute (Real Prop. Law, § 260) was amended by adding this: "The provisions of this section do not apply to a grant of such property made to the people of the state of New York, nor to a person where the title granted to such person shall thereafter by grant or mesne conveyance become vested in said people." The amendment gave the state the right to try these titles in its

own name rather than in that of its grantor. This change affects not the merits, but the procedure only; and, though this amendment was made after the former action was begun, it has not deprived the defendants of any meritorious defense. *Saranac L. & T. Co.* v. *Roberts*, 125 App. Div. 333, 345. "It is a general rule that, in the absence of words of exclusion, a statute which relates to the form of procedure or the mode of attaining or defending rights, is applicable to proceedings pending or subsequently commenced." *Matter of Davis*, 149 N. Y. 545. This amendment is retroactive in its application, though not so declaring affirmatively. *Peace* v. *Wilson*, 186 N. Y. 403; *Laird* v. *Carton*, 196 id. 169. The amendment is valid and the state deeds are not void. Real Prop. Law, § 260; Code Civ. Pro. § 1501; *Saranac L. & T. Co.* v. *Roberts, supra; Crary* v. *Goodman*, 22 N. Y. 170; *Matter of Davis*, 149 id. 539; *Whiting* v. *Edmunds*, 94 id. 313, 314.

It follows that the plaintiff may maintain this action.

While the foregoing views, if correct, dispose of the case, the attorneys have argued at length another question and seem entitled to learn the views of the court thereon.

What right has the state against the defendants under its purchase of these islands at the tax sale of 1871 and its deed in 1875, recorded in 1877?

At the time of that sale, the Tax Law of 1855 (Laws of 1855, chap. 427) was in force. Under its provisions the comptroller was required to execute a certificate of sale and deliver it to the purchaser. Two years from the last day of the sale were allowed for redemption by the owner or occupant of the premises. After the period of redemption had expired, upon written application of the purchaser, the comptroller was required to make and deliver a deed of the premises to the purchaser. Laws of 1855, chapter 427, section 68, con-

tains this provision: " Whenever any lot or separate tract of land sold for taxes by the comptroller, and conveyed as hereinbefore provided, shall, at the time of the expiration of two years given for the redemption thereof, or any part thereof, be in the actual occupancy of any person, the grantee to whom the same shall have been conveyed, or the person claiming under him, shall serve a written notice on the person occupying such land, within two years from the expiration of said time to redeem; * * * no conveyance made in pursuance of this section shall be recorded, until the expiration of such notice, and the evidence of the service of such notice shall be recorded with such conveyance." The occupancy which requires such notice must be " at the time of the expiration of the two years given for the redemption thereof," — in this case September, 1873. The essential question is, Were the lands then in the actual occupancy of any person? The definition of an " occupant " is in the statute (Laws of 1893, chap. 711, § 14, an act passed later than the time in question here, but being declaratory of the meaning of the word " occupant " it is controlling for the past as well as the future) and is as follows: " The term occupant shall be construed to mean such a person who has lawfully entered upon the lands so occupied and is in possession of the same to the exclusion of every other person; and the term occupancy shall mean the actual, lawful and exclusive use and possession of such lands and premises by such an occupant." The word " lawful," as used, means under some right to enter, either as owner or claiming adversely, or as tenant of the owner, or under some judgment or executed process of the court. In 1873 Mr. Dunning was not in such lawful possession; he was not in possession to the exclusion of every other person until after 1874, nor was he so in possession as a tenant of, or representing, Murray.

Murray was not an occupant, though he then had a camp there. A camper is not an occupant within the above definition; nor is one who, without color or claim of title, enters and takes possession. It is true there should be a liberal construction of this statute, on behalf of a true claimant to the land, or of one in good faith holding in adverse possession, but, if he has no real claim or interest, a liberal construction cannot aid him. To be entitled to notice, the land must be occupied within the definition in the statute. *People ex rel. Marsh* v. *Campbell,* 143 N. Y. 335; *People ex rel. Chase* v. *Wemple,* 144 id. 478; *Ostrander* v. *Reis,* 206 id. 448; *Matter of Rourke* v. *Metz.* 139 App. Div. 155; affd., 202 N. Y. 604; *People ex rel. Moynehan* v. *Gaus,* 134 App. Div. 80; affd., 198 N. Y. 501. There was then no occupant of this island in September, 1873, to whom notice was required to be given by the purchaser, and the deed was properly recorded.

The comptroller's deed under the statute is presumptive evidence of the regularity of the sale and that all notices to the end of the redemption period have been given. Tax Law, § 131. The holder of this deed has then a presumptive legal title; but, if the land was occupied at the expiration of the redemption period, notice to redeem must be given to such occupant by " the grantee to whom the same (the land) shall have been conveyed." Thus the purchaser at the tax sale must procure his deed and give the required notice to the occupant. If such notice is not given, what is the penalty? It is fixed by statute: " No deed made in pursuance of this section shall be recorded until the expiration of such notice and the evidence of the service of such notice shall be recorded with the conveyance." If the notice is required and is not given within two years, then of course the notice can never be served within the required time, the record of the

deed can never become valid, the title can never become absolute and the Statute of Limitations in the Tax Law can never run against the occupant. The service of the notice is a condition precedent to procuring a valid record of the deed and an absolute title to the purchaser at the tax sale, but it is not a condition precedent to recording the deed and procuring a presumptive legal title. As soon as received, the deed may be recorded, even though there is in fact an occupant and the notice was not given. This deed, which must be executed and delivered before the notice is given, is to be recorded in the clerk's office of the county where the land is situated. The statute provides the clerk no means of learning whether or not the land is occupied, nor does it require any proof as to occupancy, or that it is not occupied, when the deed is offered for record. The purchaser's deed then, when offered for record properly executed, must be recorded; and, if the land is unoccupied, the record is valid. We are thus in this position: the record of one deed may be both valid and void, as the proof may later show in any case. This deed of 1875, for example, covers thousands of acres of land. Here and there a small tract may have been occupied; the great part, so far as this record shows at least, is wild, vacant, forest land — unoccupied land. As to this vacant part, the record is valid. In *People* v. *Ladew,* 190 N. Y. 544, on reargument, when the question was pointedly presented, the Court of Appeals directly so held, saying: " that such record (not the deed) was ineffective as against the defendant in this action in reference to the particular land which is the subject of the litigation," but not in reference to unoccupied lands. I take that to be the true construction of the decision in *Ostrander* v. *Reis, supra,* and that Judge Gray means, as he states, that " the record was absolutely void. The

tax deeds * * * regarded as though they had not been placed upon the record at all,'' that the estate in fee simple will never become absolute under such record as to the particular lands in question. (That decision deals particularly with the effect of Laws of 1890, chapter 556, which was claimed to have cut off the right of redemption in that case, and Judge Gray cited and relies upon a decision in the *Ladew* case.)

I conclude, therefore, that the record of the deed of 1875 is legal and effective until it is shown that a particular piece of land included in the deed was occupied at the expiration of the period of redemption; and, if occupied, the required notice to the occupant not having been given, the record is void as to that particular piece. But the deed, till such occupancy is shown, is presumptive evidence of title. Tax Law, § 131. It is true that the provision of this section 131 in these words, ''After two years from the date of his conveyance such presumption shall be conclusive,'' has been held to be invalid. *Bryan* v. *McGurk,* 200 N. Y. 332. But the preceding provision in the section, ''After the expiration of one year from the time of sale the comptroller shall, after application in writing therefor * * * execute in the name of the people of the state * * * a conveyance of any lands so sold by him for taxes and not redeemed * * * which shall vest in the grantee an absolute estate in fee simple, subject to all claims which the state may have thereon for taxes or other liens or incumbrances, and which shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and in accordance with all the provisions of law relating thereto,'' has not, so far as I have been able

39

to find, ever been questioned. These islands not having been so occupied, the record of the deed was valid and effective and in a proper case would set the Statute of Limitations running.

Section 132 of the Tax Law (following Laws of 1896, chap. 908; Laws of 1893, chap. 711, § 12; Laws of 1885, chap. 448, as amd. by Laws of 1891, chap. 217) is valid; it contains the following provision: " Every such conveyance heretofore executed by the comptroller, county treasurer or county judge and all conveyances of the same lands by his grantee or grantees therein named, which have for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located * * * shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given." In order that this provision may be effective as a Statute of Limitations, a reasonable opportunity must be given to the landowner or claimant to assert his rights. *Saranac L. & T. Co.* v. *Roberts,* 195 N. Y. 303. The comptroller published the notice provided for in section 133 of the Tax Law in December, 1894, which put him in possession of all the wild, vacant and forest lands to which the state holds title. This notice so published by the comptroller covered the lands in question; at least the state would not be heard to question it. Thus was given to the landowner or occupant his opportunity to bring an action against the comptroller and to assert his right to the islands against the state. *People* v. *Inman,* 197 N. Y. 200, 205. But because defendant and his predecessors have occupied buildings on this island for many years, it is argued that the island was not wild, vacant, forest lands.

These islands were within the limits of the Adirondack park and the forest preserve; to them the state had presumptive title, at least, under its tax deed; they are within the description in the comptroller's notice; they are in the midst of the forest, and the defendant, who lived on the islands at the time the comptroller's notice was published, was the state's custodian, who was so there acknowledging the state's title. It can hardly be claimed that the lands were not "wild, vacant, forest lands," because the state had a keeper or custodian or forest ranger thereon. The deed to the state in 1875 was admissible in evidence, and, being properly recorded as to the lands in question here (which are "wild, vacant, forest lands, to which the state holds title), was conclusive evidence that the sale and proceedings were regular and all notices in the proceedings, prior to the expiration of the redemption period, were regularly given. *Saranac L. & T. Co.* v. *Roberts,* 195 N. Y. 321; *Halsted* v. *Silverstein,* 196 id. 1. The defense, therefore, that the tax sale was irregular and invalid and consequently the deed is invalid is barred by the statute. The deed is conclusive evidence against this defense.

The doubt expressed by the courts whether, "as to an owner in actual possession of land," the record of a hostile conveyance is sufficient to set the Statute of Limitations running against him, so as to destroy his title (*Meigs* v. *Roberts,* 152 N. Y. 371, 372), need not be considered, because, when the comptroller's notice was published, defendant was not the owner or in possession for himself. The state was in possession. *People* v. *Kelsey, supra.*

I conclude that, as against these defendants, the state has shown title to the islands under its tax deed of 1875, and may recover in this action.

Judgment for plaintiff.