RANDOLPH M. VALZ et al., Appellants, *v.* SHEEPSHEAD BAY BUNGALOW CORPORATION et al., Respondents.

124

(Argued May 2, 1928; decided July 19, 1928.)

*Louis Marshall* and *Robert E. L. Lewis* for appellants. This appeal has been properly taken as of right pursuant to article VI, section 7, of the Constitution of this State, and subdivision 1 of section 588 of the Civil Practice Act, since the judgment entered upon the decision of the Appellate Division finally determined an action wherein is directly involved the construction of the due process clauses of the Constitutions of this State and the United States. (*Red Cross Line* v. *Atlantic Fruit Co.*, 233 N. Y. 373; *People ex rel. Astoria L., H. & P. Co.* v. *Cantor*, 236 N. Y. 417; *Virginia* v. *Rives*, 100 U. S. 313; *Ex parte Virginia*, 100 U. S. 346; *Scott* v. *McNeal*, 154 U. S. 34; *C., B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226; *Home Tel. & Tel. Co.* v. *Los Angeles*, 227 U. S. 278.) The proceedings taken in the foreclosure action, whereby it was sought to exclude the appellants from their interest in the mortgaged premises, were null and void in that they did not comply with the requisites of due process of law as defined by the Code of Civil Procedure and as guaranteed by the State and Federal Constitutions.

(*McDonald* v. *Mabee*, 243 U. S. 90; *Simon* v. *Southern Ry.*, 236 U. S. 115; *Dalton* v. *Weber*, 203 Mich. 455; *Cooper* v. *Reynolds*, 10 Wall. 308; *Pringle* v. *Woolworth*, 90 N. Y. 502; *Bradley Mfg. Co.* v. *Burrhus*, 135 Iowa, 324; *St. Paul Savings Bank* v. *Anthier*, 52 Minn. 98; *O'Connell* v. *Gallagher*, 104 App. Div. 492; *Williams* v. *Van Valkenburg*, 16 How. Pr. 144; *Wilmerding* v. *Corbin Banking Co.*, 126 Ala. 268; *Lutkins* v. *Young*, 63 Wash. 452; *Graves* v. *Smith*, 278 Mo. 592; *Brisbane* v. *Peabody*, 3 How. Pr. 109.) The *ex parte* order amending *nunc pro tunc* the order of publication in the foreclosure action was a nullity, and has been given such effect by the courts below in this action as to deprive the appellants of their property without due process of law. (*Blossom* v. *Estes*, 84 N. Y. 614; *Cossitt* v. *Winchell*, 39 Hun, 439; *Klein* v. *Southern Pac. Co.*, 140 Fed. Rep. 213; *Burnside* v. *Wand*, 170 Mo. 531; *Guarantee Trust Co.* v. *Phila., R. & N. C. R. R. Co.*, 160 N. Y. 7; *Conklin* v. *Federal Trust Co.*, 176 App. Div. 572; *Hollander* v. *Wallace*, 167 App. Div. 217; *Wilson* v. *Banque Francaise du Mexique*, 124 Misc. Rep. 690; *Ladenburg* v. *Commercial Bank*, 87 Hun, 274; 146 N. Y. 406; *Hern* v. *Sample*, 233 Mich. 140; *Baker* v. *Riordan*, 65 Cal. 368.) The contention that the decisions of the courts below may have been based on some other ground than that involving a construction of the due process clause of the State and Federal Constitutions, and that, therefore, they preclude this appeal, is without merit in law or in fact. (*O'Connell* v. *Gallagher*, 104 App. Div. 495; *Galway* v. *Met. El. Ry. Co.*, 128 N. Y. 132; *Cox* v. *Stokes*, 156 N. Y. 491; *Slayback* v. *Raymond*, 40 Misc. Rep. 609; *Eidlitz* v. *Manhattan Wrecking Co.*, 164 App. Div. 596; *Kenyon* v. *National Life Assn.*, 39 App. Div. 294; *Treadwell* v. *Clark*, 190 N. Y. 60.)

*Hugo Hirsh, Morgan J. O'Brien, Jr.*, and *Bernard Sobol* for American Trust Company et al., respondents. This

appeal should be dismissed because the meaning and not the validity of sections 440–444 of the Code of Civil Procedure is involved. (*People ex rel. Moss* v. *Supervisors*, 221 N. Y. 367; *People ex rel. Curtis* v. *Kidney*, 225 N. Y. 299; *Matter of Haydon* v. *Carrol*, 225 N. Y. 84; *Arndt* v. *Griggs*, 134 U. S. 316; *Tyler* v. *Judges of Registration*, 175 Mass. 174; *Security Bank* v. *California*, 263 U. S. 282.) The mistake in the service by publication made in the 1917 mortgage foreclosure proceedings was a mere irregularity which was cured by the order *nunc pro tunc* so that there is no violation of due process of law herein. (*Close* v. *Calder Co.*, 139 App. Div. 175; 203 N. Y. 590; *Loring* v. *Binney*, 38 Hun, 152; 101 N. Y. 623; *Stuyvesant* v. *Weil*, 167 N. Y. 421; *Cunningham* v. *Cassidy*, 17 N. Y. 276; *Wallace* v. *Feely*, 10 Daly, 331; 88 N. Y. 646; *Hedley* v. *Loomis*, 116 Misc. Rep. 605; *Powlak* v. *Gruszecki*, 124 Misc. Rep. 447; *Silleck* v. *Heydrick*, 2 Abb. Pr. [N. S.] 57; *Levy* v. *McMahon*, 170 App. Div. 731; *Sage* v. *Central R. R. Co.*, 99 U. S. 334.) While the court below did not determine this case on the question of estoppel, the silence of the plaintiffs herein from October, 1917, when they first received notice of the pendency of the foreclosure action, until August 5, 1925, when they commenced the present action, estops them from seeking relief in a court of equity. (*Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Storrs* v. *Marker*, 6 Johns. Ch. 166; *Trustees, etc.,* v. *Smith*, 118 N. Y. 634; *Levinson* v. *Myers*, 100 Misc. Rep. 379; *Seaman* v. *Leonardi*, 110 Misc. Rep. 532; *State Bank of Brocton* v. *Brocton Fruit Juice Co.*, 152 App. Div. 335; *McMahon* v. *Cook*, 107 App. Div. 150; *Kirk* v. *Hamilton*, 102 U. S. 68; *Dold Packing Co.* v. *Doermann*, 293 Fed. Rep. 315.) While the court below did not determine this case on the question of laches, the laches of the appellants herein is sufficient to bar them from any equitable relief whatsoever. (*Chase* v. *Chase*, 20 R. I. 202; *Calhoun* v. *Millard*, 121 N. Y. 69; *Crane* v. *Stiger*, 2 T. & C. 577; *Moore* v. *Shaw*,

77 N. Y. 512; *Brown* v. *Frost*, 10 Paige, 243; *McKechnie* v. *McKechnie*, 3 App. Div. 91; *Mulvey* v. *Gibbons*, 87 Ill. 367; *Mahaffy* v. *Faris*, 144 Iowa, 220; *Harlow* v. *Iron Co.*, 41 Mich. 583; *Royal Bank* v. *Railroad Co.*, 125 Mass. 494.)

*Clarence F. Corner* for Flatbush Savings Bank et al., respondents. This appeal is not within the jurisdiction of this court. (*People ex rel. Moss* v. *Supervisors*, 221 N. Y. 367; *Matter of Haydorn* v. *Carroll*, 225 N. Y. 84; *People ex rel. Curtis* v. *Kidney*, 225 N. Y. 299; *American Land Co.* v. *Zeiss*, 219 U. S. 47; *Sauer* v. *City of New York*, 206 U. S. 536.) The defect in the foreclosure action was an irregularity only and was not a jurisdictional defect. (*Miskind-Feinberg Realty Co.* v. *Sidorsky*, 189 N. Y. 402; *Stuyvesant* v. *Weil*, 167 N. Y. 421; *Loring* v. *Binney*, 38 Hun, 152; *Close* v. *Calder*, 139 App. Div. 175; *Brook* v. *Saylor*, 44 Hun, 554; *Van Wyck* v. *Harvey*, 4 Abb. Ct. App. Dec. 496.) Appellants are estopped from obtaining this equitable relief as they do not come into court with clean hands. (*McKenna* v. *Fidelity Trust Co.*, 184 N. Y. 411.) The defendants in the foreclosure action were excluded from their interest in property in this State by due process of law as defined by the Code of Civil Procedure and as guaranteed by the State and Federal Constitutions. (*City of New York* v. *Wright*, 243 N. Y. 80; *American Land Co.* v. *Zeiss*, 219 U. S. 47; *Arndt* v. *Griggs*, 134 U. S. 316; *Ballard* v. *Hunter*, 204 U. S. 241; *Huling* v. *Kaw Valley Railway & Improvement Co.*, 130 U. S. 559; *Sauer* v. *City of New York*, 206 U. S. 536.)

LEHMAN, J. Antonio M. Valz, a resident of Virginia, executed in 1912 a mortgage for the sum of $25,000 upon certain real estate which he owned in the county of Kings. Valz died in July, 1916, leaving a widow, Julia I. Valz, and six children, his heirs at law. In July, 1916, the holders of the first mortgage brought an action for the

foreclosure of the mortgage. In that action an order was duly made for service by publication of a supplemental summons upon the non-resident defendants named therein, among whom were the children and heirs at law of Valz. The order provided for publication in two newspapers: The Brooklyn *Daily Times* and the Brooklyn *Citizen.* It also provided for the deposit in the General Post Office of sets of copies of the summons and complaint and of the order of publication, directed to the defendants named in the order, at the addresses therein specified.

. Through an unfortunate mistake of a clerk in the office of the attorney for the plaintiff in the foreclosure action, service of summons was not made, in accordance with the terms of the order, by publication in the Brooklyn *Daily Times.* Instead the summons was published in the Brooklyn *Daily Eagle,* a newspaper with a slightly larger circulation. All the subsequent proceedings in the action were taken upon the mistaken assumption that the order of publication so provided. Copies of the summons and complaint directed at correct addresses to the non-resident parties defendant in the foreclosure action, including the children and heirs at law of Valz, were deposited in the General Post Office in Brooklyn and were received by the parties to whom they were directed. The " copy " of the order of publication inclosed therewith recited that publication was directed to be made in the Brooklyn *Daily Eagle.* The proof of publication contained similar recitals.

The heirs at law of Valz who resided in Virginia did not appear in the action. Judgment of foreclosure was entered upon their default and the property was sold for the sum of $10,000. In 1924 the plaintiffs in the foreclosure action procured *ex parte* an order amending *nunc pro tunc* the order for service by publication, by inserting the words " Brooklyn *Daily Eagle* " in place of Brooklyn *Daily Times.*

Since the sale in the foreclosure action there has been a manifold increase in the value of the property. It has been subdivided and improvements costing hundreds of thousands of dollars placed upon it. Though the non-resident owners of the equity of redemption — the heirs at law of Valz, the mortgagor — received copies of the summons and complaint in the foreclosure action, and chose not to appear therein, they now claim that the judgment of foreclosure is not binding upon them because the summons was not published as directed in the original order of publication. They bring this action to redeem the property, which has now become very valuable, from the lien of the mortgage. They urge that, though they knew of the foreclosure action, they had no legal notice of it. The courts below have held that the failure to publish the summons as directed in the original order constituted only an irregularity which the court might by subsequent order correct.

There is no dispute in regard to any question of fact. The findings of fact are substantially in accord with the stipulation of the parties and the records on file in the court in which the judgment of foreclosure and sale was made and entered. Upon those findings the court has based the conclusions that " the publication by inadvertence in the Brooklyn *Daily Eagle* instead of in the Brooklyn *Daily Times* was a mere irregularity which could be cured and was cured by the *nunc pro tunc* order of April 14th, 1924," and " that in the said foreclosure action * * * jurisdiction of the widow of Antonio M. Valz and of the heirs at law of Antonio M. Valz was duly obtained." The sole question presented by the plaintiffs and passed upon by the courts below is whether the court in the foreclosure action acquired jurisdiction to render judgment binding upon the non-resident defendants in that action. If the conclusion of the courts that the court had jurisdiction to foreclose the non-residents of

their rights to the property was erroneous, then undoubtedly these non-residents have been deprived of their property without due process of law, despite the provisions of the State and Federal Constitutions.

The Legislature has the power to provide for service of the summons without the State by mail and publication. It is not disputed that service of a summons in the manner provided by the statute gives to the non-resident defendants sufficient notice of the action and opportunity to appear and be heard therein, and that a judgment rendered thereafter, even though the non-resident defendants do not appear, is a judgment rendered in accordance with due process of law. There must, however, be a substantial compliance with these provisions of the statute; otherwise the court is without jurisdiction to render a judgment binding upon a non-resident who has not appeared. The Legislature must determine the steps which must be taken to confer jurisdiction upon the courts of the State. Notice to a defendant of the pendency of the action given in other manner is nugatory and may be disregarded. (*Wuchter* v. *Pizzulti*, 48 Sup. Ct. Rep. 259, and cases there cited.)

The Legislature of New York has provided the method to be used for service of the summons upon non-resident defendants in sections 438 to 442 of the Code of Civil Procedure (now section 232 of the Civil Practice Act and rules 50 to 52 of the Rules of Civil Practice). First there must be an order for publication based upon sufficient affidavits. Such an order has been made in this case. The order must contain a direction to publish the summons in at least two newspapers designated in the order, not less than once a week for six successive weeks. It must also contain either a direction that copies of the summons, complaint and order be deposited in a post office, directed to the defendant, or a statement that the court or judge, " being satisfied, that the plaintiff cannot * * * with reasonable diligence, ascertain a place or

places, where the defendant would probably receive matter transmitted through the post office, dispenses with the deposit of any papers therein." Some discretion is vested in the judge as to what newspapers shall be designated. In other matters the Legislature has itself directed what provisions for service of the summons shall be contained in the order.

It was conceded upon the argument that the Legislature might have provided that publication might be made in two newspapers selected by the court before publication is begun, or approved by the court thereafter; or the Legislature might have provided in express terms that where, through inadvertence, publication is made in a newspaper other than one of those selected by the court, the court might thereafter disregard the error as a mere irregularity. If the Legislature had so provided in express terms, then, perhaps, no substantial claim could have been made that the judgment was not binding upon the non-resident defendants named in the summons, and no substantial constitutional question would be involved. Here the Legislature has not so provided in express terms, but the courts have so construed the statute. On the grounds that the construction of the statute and not the construction of the Constitution of the State or of the United States is directly involved (Civ. Prac. Act, section 588), the respondents have moved to dismiss the appeal taken without permission.

The terms " directly " or " indirectly " involved are relative rather than absolute, and hence are not capable of unvarying definition. We have held that upon an appeal from a decision that the Legislature did not, by statute, intend to make the expenses incurred by a county officer, removed by the Governor, a county charge, the question of whether a statute which did make such expenses a county charge would be constitutional was not directly involved. (*People ex rel. Moss* v. *Supervisors,* 221 N. Y. 367. See, also, *Matter of Haydorn* v. *Carroll,*

225 N. Y. 84; *People ex rel. Curtis* v. *Kidney,* 225 N. Y. 299.) It is to be noted that in these cases the primary question presented to the courts involved only the meaning of a statute and even if the construction placed upon the statute was erroneous, the error would not deprive any party of a constitutional right. Not so here. The sole question presented to the courts in the instant case is whether the judgment of foreclosure is based upon due process of law. That question involves directly and necessarily the construction of the Constitution. True it is, that in determining that question the courts must give consideration to the proper construction and effect of the statute. Perhaps, indeed, that consideration may be decisive. Even so, we construe the statute only to determine whether under the due process clauses of the State and United States Constitutions the judgment of foreclosure has any binding force. We are, of course, not bound by the construction placed upon the statute in the courts below. If we decide that they have given an unwarranted effect to the statute, then the plaintiffs have been deprived of their property by a judgment not based upon due process. Where the question of whether a judgment is the result of due process is the decisive question upon an appeal, the appeal lies to this court as a matter of right.

It is also urged that the construction of the Constitution is not directly or necessarily involved in this appeal because the decision of the courts below might be based upon a finding of estoppel or laches. The answer to that contention is that the courts below did not and could not find estoppel or laches. There can be no estoppel based upon failure of the non-resident defendants, named in the foreclosure action, either to appear in that action or to take other steps to assert their rights to the property under foreclosure unless some duty to act in assertion of their rights was placed upon such defendants. If they received legal notice of the foreclosure action which called upon them to assert their rights, if any, in the proper

forum, then the court had jurisdiction to enter judgment of foreclosure upon their default in appearance. If they had no such notice, then it seems clear that they were under no duty to assert their rights until they chose to do so, and failure to act earlier, where there was no duty, can create no estoppel. If the facts in this case arouse an instinctive feeling that the non-resident owners of the equity of redemption were called upon to assert any rights that they might have in the foreclosure action or remain forever silent, justification, if any, for that view must be found in the fact that, through the proceedings actually taken to serve the summons upon defendants named in the summons, they received the same actual notice or knowledge as if the summons had been published as directed in the older. The question remains whether that notice constituted a sufficient service to give the court jurisdiction to render a judgment binding upon them.

The courts are commanded to disregard mistakes and to cure defects or irregularities in process, pleadings or other proceedings "not being against the right and justice of the matter." (Sections 721 and 722 of the Code of Civil Procedure; section 109 of the Civil Practice Act.) It has been held that the courts may disregard unsubstantial defects even in the service of process by publication. (*Loring* v. *Binney*, 38 Hun, 152; affd., 101 N. Y. 623; *Mishkind-Feinberg Realty Co.* v. *Sidorsky*, 189 N. Y. 402.) In those cases and in other cases that might be cited, the defects were only in the form of process. Here, it is said that at the time the judgment was entered there was a complete failure to carry out the mandatory provisions of the statute to publish the summons in two newspapers *designated in the order.*

The statutory notice is the basis of the court's jurisdiction; the courts have no power to hold that a notice not conveyed in a manner permitted by the statute may be equally effective. The statute does not, however, provide that the notice must be published in newspapers

named by the Legislature. The order of publication might have provided for the service of the order by publication in the two newspapers in which the publication was actually made. The question here presented is whether the court obtains jurisdiction where publication is made by inadvertence in a newspaper which the court did not designate, though it might have done so, and where in other respects service of the summons is made in exact accordance with the statute and order of publication.

The exact question has, so far as we know, never been adjudicated by any appellate court in this or any other State. In *Brisbane* v. *Peabody* (3 How. Pr. 109) the Special Term at Erie county of the Supreme Court held that such a defect was jurisdictional. Aside from the fact that the decision was made only by a single judge, it is fair to point out that the statute at that time did not provide for deposit of the summons and complaint in the post office, and the only means of notice under the statute was by publication. In the case now under review, such a deposit was made, and the non-residents actually received the summons and complaint. Except for the purpose of fixing the time when service would be complete, the provisions of the statute for publication could in this particular case serve no purpose beneficial to the non-resident defendants. We need not now decide whether these additional factors present in this case a sound basis for distinction. A decision of a judge at Special Term rendered in 1847 without a reasoned opinion can hardly be regarded as a precedent or authority of weight at this time. We regard the question here presented as a novel one.

No rule or measure has ever been devised by which we may determine in every case, with definite certainty, whether a defect is jurisdictional or is a mere irregularity which may be disregarded or amended. The purpose of the statutory directions for deposit, unless dispensed with, of the copies of the summons and complaint in

the post office and for the publication of the summons in two newspapers is, of course, to give the defendant notice of the bringing of the action and opportunity to defend. Notice is directed through several channels in the reasonable expectation that, through one of the channels, it will be brought to the attention of the non-resident defendant. Here that expectation has been realized. The non-resident defendants received the copies of the summons and complaint which had been deposited in the post office addressed to them, in accordance with the statute, for the purpose of giving them notice of the bringing of the action and of their right to defend. The notice so received was not casual. Opportunity to appear and defend was afforded to the non-resident defendants, not as a favor, but as a matter of right. They chose not to do so. The property sold for only a fraction of the amount of the mortgages upon it. The equity of redemption was apparently valueless. The non-residents may have assumed that publication was made in accordance with the order as signed by the judge. At least it is clear that they did not suppose that after judgment of foreclosure, they had any title to the property, until some undisclosed person discovered the defect and informed them of it. Their failure to appear originally was not occasioned, or contributed to, by the defect in publication. They chose not to assert against the mortgagee their right to redeem the property from the mortgage at the time when they believed that they were called upon to assert it or remain forever silent. Now that this right has become valuable, they seek to assert it against others who trace their claim of title to the sale under foreclosure. These circumstances would be a decisive factor in the exercise of the court's discretion to disregard and cure the defect, if the defect constitutes only an irregularity. They may be relevant in the determination of the question whether there is room for the exercise of discretion. They are not entirely

decisive of that question. There is no field for the exercise of discretion where there is no jurisdiction in the court under the statute.

The Legislature has required publication in two newspapers for not less than once a week for six consecutive weeks. Without such publication there can be no constructive notice; so the Legislature has ordained. The Legislature has conferred upon the court or judge discretion in the designation of newspapers in which publication shall be made, to the end that publication shall be made in journals which are most likely to give notice to the defendant to be served. Where publication has by inadvertence been made in a newspaper not designated in the order, but which the court might in the exercise of its discretion have designated, and especially where the purpose of the Legislature has been consummated by actual notice conveyed to the defendant in manner authorized by the statute, the error may, in fact, be inconsequential. The purpose of the Legislature to give to a non-resident defendant notice of the bringing of the action and opportunity to appear therein might be thwarted if such publication were made in newspapers not likely to come to the attention of the defendant to be served. Therefore, the Legislature has left the choice of the newspapers in which publication is to be made to the court or a judge thereof. That choice is merely part of the procedure calculated to make the publication effective. The Legislature ordains the manner in which service by publication shall be made. The court or judge merely selects the instrument. The instrument derives no added force by such selection in advance. No conceivable purpose of the Legislature is thwarted if the court disregards the inadvertent use of an instrument not selected by a judge in advance, if the instrument is one which the court might have selected originally. No safeguard which the Legislature has chosen to provide for the benefit of a non-resident defendant is rendered

less effective if the court cures such a defect in the service by publication by order made after the publication is complete.

It has been held that a retrospective statute may validate a tax void for failure to comply with some statutory requirement that the Legislature might have originally dispensed with. (*Ensign* v. *Barse*, 107 N. Y. 329, at page 346.) The Legislature may in the same way validate a tax sale unless the proceedings are so fatally defective that no title has passed. (*People* v. *Inman*, 197 N. Y. 200, and cases there cited; *Meigs* v. *Roberts*, 162 N. Y. 371; *Halsted* v. *Silberstein*, 196 N. Y. 1, 14.) We recognize that analogy between the legislative power to cure defects in the assessment of taxes even after tax sale, and the power of the courts to disregard error or defects in the service of process, is not complete. Nevertheless these cases are not without significance in the determination of the question we are now considering. Under the statute governing service by publication, the court obtains jurisdiction to grant judgment binding upon a non-resident defendant through constructive notice given through service by publication. Choice of the newspapers to be used is left to the court or judge. We may not ascribe to the Legislature an intent to give undue importance to rigid formality. The observance of requirements left by the statute to the discretion of the court or judge may not reasonably be regarded as a statutory condition to the court's jurisdiction. Within the limits of that discretion, the court which has power to define the requirements may cure the defects by changing the requirements it has itself imposed.

It is said that if we hold that the court acquires jurisdiction by publication of the summons in a newspaper not designated in the order, a plaintiff may with impunity disregard completely the designation in the order and proceed to publish the summons in newspapers chosen by himself. In affirming the judgment of the Appellate

Division, we hold only that the court acquires *jurisdiction* by the publication of the summons in a newspaper not designated in the order where the newspaper in which publication has been made is one which might have been designated. The result is that a judgment rendered thereafter is not subject to collateral attack. The service of the summons is nevertheless irregular, and a defendant upon whom irregular service has been made may still move in the action to vacate the defective service, or for other relief. Such a motion is addressed to the discretion of the court. (Sections 105 and 109, Civil Practice Act. See *Wallace* v. *Dimmick*, 24 Hun, 635; *Bank of Havana* v. *Magee*, 20 N. Y. 355; *McCoun* v. *N. Y. C. & H. R. R. R. Co.*, 50 N. Y. 176; *Gribbon* v. *Freel*, 93 N. Y. 93; *Jones* v. *Nelson's Executrix*, 51 Ala. 471; *Parsons* v. *Swett*, 32 N. H. 87; *Lane* v. *Ball*, 83 Ore. 404; *Scott* v. *Jarrell*, 167 N. C. 364; *Pollard* v. *Wilder*, 17 Vt. 48; *Barker Co.* v. *Central West. Inv. Co.*, 75 Neb. 43.) The defect may be disregarded or cured either before or after judgment only where it is not " against the right or justice of the matter," and no substantial right of any party is thereby prejudiced. Since service of the summons forms the basis of the court's jurisdiction to render judgment against the non-resident defendant, where the court, even in the exercise of discretion, refuses to disregard or cure the defect in the service of the summons and sets that service aside, the judgment falls with the destruction of the foundation on which it is based. Here the non-resident defendants received formal notice of their right to defend. They chose not to assert any defense in the action. Error in the publication was inadvertent, and the publication was made in a newspaper as likely to give notice to the defendant to be served as the newspaper originally designated. In such case there is room for the exercise of the court's discretion to disregard and cure the defect by belated approval of the newspaper in which publica-

tion was made. We do not decide whether under other circumstances the court should take similar action, even though it has jurisdiction.

The judgment should be affirmed, with costs.

CRANE, ANDREWS and O'BRIEN, JJ., concur; CARDOZO, Ch. J., POUND and KELLOGG, JJ., dissent and vote for reversal on the ground that the defect in service of summons was jurisdictional.

Judgment affirmed.