## In the Matter of the Estate of HARRIS EPSTEIN, Deceased.

Surrogate's Court, Bronx County, April 30, 1941.

*Jerome Weiss,* for Frederick Weiss and Jacob Harrison, as executors, etc.

*Lawrence S. LaRosa,* special guardian for the incompetent distributee.

*Alexander Cheifetz,* for certain distributees.

*Bernard Budnick,* for the widow.

*Leonard M. Henkin,* for Zimmerman & Zimmerman, claimants.

*Koenig, Bachner & Koenig* [*Seymour I. Mantell* of counsel], for the Beth Abraham Home for Incurables.

*Charles Howard Levitt* [*Michael Sibilio* of counsel], for the Home of the Daughters of Israel for the Aged, Inc.

*Bachrach, Bachrach & Bisgyer* [*Helen Goldstein* of counsel], for the Jewish Sanitarium & Hospital for Chronic Diseases.

HENDERSON, S. The five motions addressed to the referee's report in this accounting proceeding are consolidated and determined as hereinafter set forth.

The decedent died November 7, 1938, owning property then worth $22,705.49, consisting of $5,580.35 in cash, seven graves in Mt. Hebron Cemetery worth $50 each, all the capital stock of one realty corporation evaluated at $9,993.09 and ninety per cent of the capital stock of another realty corporation evaluated at $6,782.05.

He left a widow and five children. His will, dated January 8, 1936, was drawn by an attorney who is one of the executors. It was admitted to probate on February 28, 1939, and letters testamentary thereunder were issued on March 11, 1939.

The testator bequeathed $1 to each of four children and a grave worth $50 to a fifth child who is an incompetent. General legacies of $100 each were bequeathed for religious purposes to three specific organizations for kadish and yahrzeit. He donated five other graves, worth $250, to charitable purposes. To his wife he gave one grave, worth $50, in addition to the following testamentary provisions for her benefit:

" *Third.* All the rest, residue and remainder of my property and estate, real as well as personal, and wheresoever situated, which at the time of my death shall belong to me or be subject to my disposal by will, I give, devise and bequeath unto my trustees hereinafter named, in trust nevertheless, upon conditions hereinafter named, to receive the rents, issues, income and profits therefrom and after defraying taxes and other lawful charges upon same, and setting aside a proportionate sum for accruing running charges, etc., to pay to my beloved wife DORA EPSTEIN during her lifetime out of the net income of my estate a sum not to exceed Fifteen ($15.00) Dollars per week, as hereinafter more specifically authorized in paragraph ' FOURTH ' hereof, except that if she marries after my decease, or dies before me, that the trust shall immediately cease and my estate shall be divided as hereinafter stated. The provision herein to my said wife as aforesaid, I hereby declare is intended to be and is given to her in full satisfaction and in lieu of, or for her dower which she may in any wise claim or demand from my estate.

" *Fourth* I hereby authorize and direct my trustees that the net income of the aforesaid trust shall be paid to my beloved wife weekly, and should the income of the estate be less than $15.00 per week and continue so for a period of two months, then and

in that event, I hereby authorize my said trustees and executors and empower them in their sole discretion, to sell, mortgage or pledge as collateral security for loans, such part or parts of my estate at public or private sale and upon such terms and conditions which in their discretion shall be necessary to secure a fund which they are hereby empowered to reinvest and keep the same invested, so that the income received from such investment and the income from the remainder of my estate shall always be not less than the sum of Fifteen ($15.00) Dollars per week from the net income of my estate. If however, the net income shall exceed an average of Fifteen ($15.00) Dollars per week, such sum shall become part of my trust estate and subject to disposal of same by my trustees as if it were originally devised to them in trust herein.

" *Fifth.* The condition under which my said wife is to receive the above trust is that she remain single during the remainder of her lifetime after my decease and should she remarry after my decease, the above trust shall immediately become null and void and she is not to receive any part of the net income, but my estate is to be divided as hereinafter stated."

The remainder of this residuary trust is vested in four remaindermen. Of this remainder, $400 is donated to religious use and the balance is divided equally among three charitable organizations. He authorized his executors to pay this $400 at any time prior to the termination of the trust. They have exercised this power.

The executors have set forth in their account and in their supplemental and amended account that the widow has elected to take against the will. The only other reference thereto in the pleadings is found in the joint objections of the four competent children who therein allege that the widow's right of election has not been adjudicated.

The referee found " that letters testamentary were issued on March 11, 1939; that on June 27, 1939, the widow served a ' notice of election ' under section 18 of the Decedent Estate Law; that the said notice was filed with the clerk of this court on September 20, 1939, and recorded on September 22, 1939; that no order enlarging the time to file the said election or relieving the default in making the said election has ever been made herein, although the twelve month period within which the same might have been sought, expired on March 11, 1940." The record discloses that the notice of election is dated June 25, 1939, and was acknowledged on that date. The facts are not disputed. There appears, however, to be some doubt as to whether or nor her election, if held to be validly exercised, is so limited by the statute (Dec. Est. Law, § 18, subd. 1,

¶¶ e and g) that she may presently take only $2,450 out of the corpus of the residuary trust in addition to the grave. The corpus exceeds the difference between the value of the grave and her intestate share. However, the testamentary direction to terminate the trust upon the widow's remarriage releases her right of election from that statutory limitation and entitles her to make an election to take her intestate share, inclusive of the grave. (*Matter of Byrnes*, 141 Misc. 346; affd., 235 App. Div. 782; affd., 260 N. Y. 465, 471, 474.)

The widow questions the referee's first conclusion of law that " the attempted election served by the widow herein, was null, void and is of no effect in-as-much as it was not filed with the Clerk of this Court within the six month period limited therefor by law, and in-as-much as no enlargement of time within which to file the same was applied for or granted, and in-as-much as an application to relieve the default in so filing was not applied for within the time limited therefor by law."

At the first hearing the referee granted the motion of the widow's counsel to excuse the default of nine days in filing and of eleven days in recording her election, and stated that the matter would proceed as if the election had been promptly and properly served and filed.

That disposition of the matter was correct, but the referee erred in his above-quoted conclusion of law.

The statute authorizes the Surrogate's Court to relieve the surviving spouse from default in filing an election within the statutory period of six months after issuance of letters and to authorize the making of such election within an additional period to be fixed by the court, provided the fiduciary's account has not been settled by decree and further that twelve months have not elapsed since the issuance of letters    (Dec. Est. Law, § 18, subd. 7.)

No decree settling the executors' account has been made, but more than the specified twelve months had expired when the application was made to the referee. The written notice of election was duly and timely served less than four months after the issuance of letters. It was filed and recorded less than two weeks after the expiration of the statutory period of six months. If it had not then been filed and recorded, application for relief from the default could have been made and granted at any time during an additional period of nearly six months. If the court could have authorized, at any time prior to March 11, 1940, the making of such election during some subsequent period, it can approve and confirm the filing on September 20, 1939, and the recording on September 22, 1939, of the notice of election which had been duly

served on June 27, 1939. The legislation by which this statute was enacted (Laws of 1929, chap. 229, § 4) directs that its provisions shall be liberally construed to carry out the legislative intention to enlarge the property rights of a surviving spouse. (Laws of 1929, chap. 229, § 20, as amd. by Laws of 1930, chap. 174, § 13.) This mandate for liberal construction has found favor in judicial determination. (*Matter of Byrnes*, 260 N. Y. 465, 472, 474; *Matter of Martin*, 244 App. Div. 647; appeal dismissed, 268 N. Y. 665.) The notice of election was filed and recorded more than two weeks before any distribution could legally be made. No account was filed until after one of the children had obtained an order more than nine months later, on July 2, 1940, directing the executors to account. The legislative intent with respect to subdivision 7 of the statute was to provide a short statute of limitation so that the settlement of estates would not be unduly delayed and accounting decrees be final in so far as a right of election is concerned. (See note of draftsman of amendment enacted by chapter 114 of the Laws of 1936.) That subdivision is also subject to the injunction of the statute for liberal construction. No conceivable legislative purpose will be thwarted by now confirming and approving, under the circumstances here present, the filing and recording inadvertently done without permission of the court which could not be questioned, except for the absence of such authorization. (*Valz* v. *Sheepshead Bay Bungalow Corp.*, 249 N. Y. 122, 136.) No interests have been prejudiced by the delay of a few days in filing and recording the notice of election. The referee's first conclusion of law is overruled and his ruling at the first hearing is sustained. The widow's delay of less than a fortnight in filing and recording her election is excused with the same effect as if she had then applied for and received relief from her default. Her election is valid and entitles her to one-third of the net estate, including the bequeathed grave.

It should be noted that in *Matter of Ball* (172 Misc. 181) the widow received no absolute legacy but was the beneficiary throughout her life of the income from a trust of one-half the net estate. The amount of that trust equaled her intestate share and entitled her to a limited right of election to take $2,500 from the trust principal without any change in the other terms of the will. (Dec. Est. Law, § 18 subd 1-b.) In addition she was the beneficiary during widowhood of the income from a trust of the other half of the net estate, but was entitled to no further right of election. These facts distinguish the *Ball* case from the decision in *Matter of Byrnes* (260 N. Y. 465) where, as here, the widow was the beneficiary during widowhood only of a single trust of the entire residuary estate.

The valid exercise of the widow's right of election also effects a statutory modification of the will. (Dec. Est. Law, § 18, subd. 2.)

The general legacies exclusive of the widow's grave and consisting of small pecuniary bequests amounting to $304 and of six graves worth $300, will be considered as exceptions envisioned by Surrogate WINGATE to the principles enunciated by him in his studied review of judicial interpretations of the statute addressed to the satisfaction of the charge placed upon the entire net estate by an election to take against the will. (*Matter of Curley*, 160 Misc. 844, 851, 853.) The testamentary benefits for the widow were the gift of one grave worth $50 and the attempted trust of the residuary estate for her benefit In addition to the $300 set apart to her by statute (Surr. Ct. Act, § 200) she is entitled by virtue of her election to the grave and so much of the residuary estate as equals one-third of the net estate less $50, together with her *pro rata* share of the income received during the executorial period (*Matter of Curley, supra*, pp. 851, 855), excluding the value of the grave from the income computation. The remainders of the attempted trust of the residue were absolutely vested and, therefore, may be accelerated. (*Matter of Curley, supra*, pp. 851, 855.) The congregation has been paid its $400 out of the residue. The three charitable corporations are presently entitled to the balance of the residuary estate in equal shares if the total charitable and religious gifts do not exceed the amount of the estate that may be devoted thereto. The several religious and charitable interests are subject to the provisions of section 17 of the Decedent Estate Law which the children have invoked.

The four competent children and the special guardian for the incompetent child have filed objections to each account. They contend that the testator has bequeathed to charitable and religious purposes more than one-half of his estate, after the payment of his debts, and that, therefore, his will is invalid as to such excess because of the statutory prohibition. (Dec. Est. Law, § 17.) The referee has determined otherwise. In support of their construction, the children have interposed objections to various items of the accounts and have addressed appropriate motions to the referee's findings and conclusions.

His second finding of fact that the value of the decedent's gross estate for the purpose of computing the half that charity and religion can take is $22,405.49, is sustained as correct. From the assets owned by the decedent the referee deducted $300 as the widow's property set off to her by statute. (Surr. Ct. Act, § 200.) The word " estate " as used in section 17 of the Decedent Estate Law means the gross estate owned by the decedent at the

time of his death, exclusive of such part thereof as cannot, under any circumstances, be subject to his testamentary disposition. It was not intended to include property set off to a surviving spouse or minor child (*Matter of Ball*, 172 Misc. 181, 183; *Matter of Brown*, 164 id. 65, 69.)

The referee found that the decedent's debts, as of the date of his death, amounted to $2,895.17. That amount is incorrect. Two claims were settled for less than the respective amounts demanded A doctor's claim for $100 was settled for $85, and should be allowed in the latter amount only. A State hospital filed a cla m for care, medical treatment and maintenance of the decedent's incompetent child in the sum of $3,400. This was adjusted out of court during the statutory administration period by the payment to the creditor on September 29, 1939, of $750 in full settlement of its claim To the amount so paid the referee added $500 which he allocated to legal services in resisting the claim, and valued this debt at $1,250. In that he erred. This claim should be allowed as a debt only in the amount paid, $750. The objectants argue that the amount of the claim, and not the sum paid in full settlement thereof, should be included among the debts for the purpose of ascertaining the portion of the estate applicable to charity and religion. There is no merit in such contention. The statute (Dec. Est. Law, § 17) prohibits the charitable and religious organizations from taking more than one-half of this decedent's " estate, after the payment of his * * * debts." There is no ambiguity in the statute The formula for the computation is clear and definite Obviously the statute does not intend the subtractions of amounts claimed by alleged creditors, or creditors indulging in hyperbole. It contemplates just debts as ascertained by adjudication or by allowance or settlement to which no objection is made by any interested party. Such debts are the only items deductible from the estate in the computation prescribed by the statute. The deductible debts aggregate $2,315.98. The decedent's estate as of the date of his death, less his debts, is valued at $20,089.51. Hence the maximum that charity and religion can take is $10,044.76. The referee's findings of fact numbered 4 and 19 are modified accordingly.

The executors are a lawyer and a certified public accountant. They were known as such to the decedent, and had been employed by him in their respective capacities during his lifetime. The former drew the decedent's will.

The latter at one time during the administration of the estate employed a firm of attorneys who performed slight legal service for the estate other than settling the State hospital claim out

of court  The referee allowed these attorneys a fee of $500. They contend that it is insufficient. It is more than liberal for the services performed, but in the absence of other objection it will not be disturbed.

Both executors had retained the other executor's brother, who is associated in practice with him, and he still represents them. He has performed most of the legal services rendered this estate. Objection is made to the amount allowed him by the referee for legal services to and including the entry of the decree herein. It is reduced to $1,200 including the sum of $400 heretofore paid him as set forth in the accounts. Compensation for legal services rendered an estate depends to a great extent upon the size of the estate. There were no extraordinary matters involved in this estate. Indeed the estate should have been settled within a few months after the service of the notice of election. Then the executors were put on notice that if valid, the election would destroy the attempted trust because of the testamentary provision for termination in the event of the widow's remarriage. They could and should have accounted and sought an adjudication of the election in October, 1939, immediately after the termination of the statutory administration period of seven months  The compensation of $1,700 for all legal services in this estate is more liberal than usual (*Matter of Kentana*, 170 Misc. 663) because of the character of the resistance to the amounts claimed by the respective attorneys. Compensation from estate assets to two or more independent attorneys may not exceed in the aggregate the amount awardable to one attorney performing the entire legal service. (*Matter of Bloomingdale*, 172 Misc. 218, 228; *Matter of Kan:ana, supra*, p. 664.) The referee's findings of fact numbered 5 and 11 are modified accordingly

The executors paid the secretary of one of them $25 for typing and mailing " about one hundred letters " to New York city banks, and calling on some banks, to inquire whether the decedent had an account therein. The letter was dictated by the other executor. The referee allowed this item. ··For obvious reasons his finding of fact thereon numbered 17 is overruled. Finding of fact numbered 5 is modified accordingly  The credit claimed for payment thereof in Schedule C is disallowed and the total of that schedule is reduced accordingly.

Seth Harrison, a son of one of the executors, presented a bill for professional services as an accountant in the sum of $786.50 on the letterhead of Jacob Harrison & Co., certified public accountants. The executor testified that he was the senior member of the firm, but that the bill was for the services of his son and the

office staff. The referee allowed $605 of this claim for administration expenses. The work involved is divided into two parts. A charge of $155 is made for preparing separate profit and loss statements of the two real estate corporations for a period of five fiscal years prior to the decedent's death and balance sheets of each corporation as of the date of the decedent's death They were prepared for use in the estate tax proceeding. The balance of $631 is charged for the preparation of schedules and statements for the supplemental and amended account. This latter work did not require the services of any professional accountant It should have been performed by the executors and their attorney Compensation therefor is included in the commissions and the fees of their attorney as hereinabove allowed This claim of Seth Harrison is allowed in the sum of $155 only. Findings of fact numbered 5 and 16 are modified accordingly.

Up to the date of the supplemental and amended account, the executors had received as income cash dividends from each corporation, aggregating $3,300, and had paid the widow $1,425. Findings of fact numbered 3 and 13 are modified accordingly.

Finding of fact numbered 14 is modified to recite that the payments approved therein were made by the corporations and not out of estate funds.

In view of my conclusion as to the validity and effect of the widow's election, it is not necessary to determine the question involved in the seventh finding of fact. Findings of fact numbered 1, 2, 6, 8, 9, 10, 12, 15 and 18 are sustained.

In addition to the debts amounting to $1,961.81, enumerated as paid in Schedule E of the supplemental and amended account, the decree will direct payment of the undisputed claim for $354.17 advanced for the decedent's hospitalization and for his home requirements The funeral and administration expenses as allowed and paid or to be paid by decretal direction, amount to $2,536.72, exclusive of commissions and the expenses of this proceeding.

Sections 17 and 18 of the Decedent Estate Law are correlated They are neither exclusive nor contradictory of each other. The effect of an election under section 18 is involved in and incidental to a determination of rights under section 17. (Matter of Apple, 141 Misc 380 ) The making of a valid election under section 18 effects a restriction upon the term " last will and testament " in section 17, as if it read " last will and testament as modified by a valid election made under section 18 of this act." A valid election has the effect of a statutory codicil to the will.

Whether or not the decedent by his will, as modified by the statutory election of his widow, attempted to bequeath to charity

and religion more than the statute permits cannot be definitely determined until the commissions and expenses of this accounting are fixed  Adjudication of the exception to the referee's second conclusion of law will await such fixation.  His third conclusion of law is modified to the extent hereinabove set forth.  The attempted trust has been extinguished by the widow's election and the entire residuary estate is presently distributable.  The referee's 13th finding of fact and fourth conclusion of law are modified accordingly.

Those entitled to costs or allowances may submit noticed applications therefor on or before May 9, 1941.  The executors may likewise submit on notice an amended computation of commissions based upon present distribution of the estate.

Proceed accordingly

(Supplemental opinion, May 16, 1941.)

HENDERSON, S.  As noted in my intermediate decision of April 30, 1941, complete determination of the consolidated motions addressed to the referee's report awaited the allowance of commissions and the fixation of the expenses of this proceeding.  Such expenses have been fixed at a total of $1,498.50, and commissions are allowed in the sum of $660.08.  The funeral and administration expenses amount to $4,695.30.  The 5th finding of fact is modified accordingly.  The value of the net estate therefore, is $15,394.21, of which the widow is entitled to one-third, or $5,131.40, including her legacy of one grave worth $50, plus her share of the income received during the period of administration.  The other legacies not bequeathed to religious or charitable purposes aggregate $54 in value.  Under the will, as modified by the widow's exercise of her statutory right of election, assets evaluated at $10,208.81 would pass to religious and charitable purposes.  This is $164.05 more than the statute permits, as computed in my prior decision herein.

The second conclusion of law is overruled.  This excess, plus its share of the income received during the administrative period, passes as intestate property to the five children in equal shares. The general legacies to religious and charitable purposes and the preferred residuary legacy to the congregation aggregate $950. The three charitable legatees of the residuary balance divide it, $9,094.76, in equal shares, together with the balance of the administrative income remaining after deducting the shares therein of the widow and the children.

Settle decree in accordance with my intermediate decision of April 30, 1941, as supplemented hereby.