(March 9, 1960)

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LAWRENCE GRANSKOFSKI, Respondent, against DUNCAN WHITEHEAD, as Director of the Buffalo State Hospital, Appellant.

APPEAL from an order of the Supreme Court at Special Term, entered August 6, 1959, in Erie County, which sustained a writ of habeas corpus.

Order affirmed, with $50 costs and disbursements.

HALPERN, J. (dissenting).  By virtue of the writ of habeas corpus sustained at Special Term, the relator, a mentally ill person, who was certified to the Buffalo State Hospital by the County Judge of Erie County on June 30, 1952, as " a proper subject for custody and treatment " and who was certified by the director of the hospital on August 26, 1952 " to be in need of continued care and treatment " and who, according to the return by the director, is still " mentally ill and in need of further care and treatment ", has been released from custody and let loose upon the community, upon the ground that the original certificate by the director had been filed in the County Clerk's office two days

too late, back in 1952. From the proposed decision of this court affirming the Special Term order, we dissent.*

The case is this: On the petition of the relator's wife and after personal notice to the relator, and upon certification by two competent psychiatrists, the County Judge of Erie County, on June 30, 1952, granted an order adjudging that the relator was mentally ill and certifying him to the Buffalo State Hospital "for observation for a period not exceeding 60 days", pursuant to section 74 of the Mental Hygiene Law. On August 26, 1952, which was three days before the expiration of the 60-day period, the director of the State hospital duly executed and swore to a certificate, certifying that he found the relator to be mentally ill and that he considered him to be in need of continued care and treatment. The 60th day after the date of the County Judge's order fell on Friday, August 29. This was followed by three nonbusiness days, Saturday, Sunday and Labor Day. Although the director's certificate had been executed on August 26, it was not filed in the County Clerk's office until Wednesday, September 3, which was the second business day after the expiration of the 60-day period.

No proceeding to review the relator's certification was brought under section 76 of the Mental Hygiene Law, within 30 days after the certificate was filed, nor was any proceeding brought under section 204 of the Mental Hygiene Law on the ground that the relator had recovered from his mental illness. The relator remained in custody for over seven years without any question being raised about the legality of his confinement.

On July 9, 1959, a habeas corpus proceeding was brought upon the ground that the relator's confinement was illegal because of the two-day delay in the filing of the certificate in 1952 by the director of the State hospital. The petition for the writ of habeas corpus alleges as an additional ground that the "petitioner is not mentally ill" but nothing was offered on the return of the writ to support this allegation and the director certified in his return to the writ that the relator "remains mentally ill and in need of further care and treatment". This certificate stands undisputed on the face of the record.

The Special Term sustained the writ of habeas corpus upon the ground that the certificate by the director "was not filed until September 3, 1952 which is beyond the time for filing".

The relevant portions of subdivisions 4 and 7 of section 74 of the Mental Hygiene Law, as they read in 1952, were as follows:

"4. The judge to whom such application is made * * * may, if satisfied that the alleged mentally ill person may require mental care and treatment, immediately issue an order directing that such person be admitted to an institution designated by the commissioner, for a period not exceeding sixty days, for the purpose of observation of such person". (L. 1946, ch. 765.)

"7. At any time prior to the expiration of sixty days from the date of the order made as provided by this section, the director or the physician in charge or the medical officer designated by either of them, or the person in charge of the institution to which the patient has been admitted for observation may, if he finds that such patient is in need of continued care and treatment, file in the office of the county clerk, a certificate setting forth his findings and the need for the continued care and treatment of such patient. Upon the filing of such

---

* We are informed that, after the argument of the appeal in this court, the relator was admitted to the Rochester State Hospital on an emergency certification on January 18, 1960, on the ground of "mental illness and abnormal behavior which was causing difficulty in the community". Thereafter on January 22, 1960, he was regularly certified to the hospital under section 74 of the Mental Hygiene Law by an order of the Livingston County Court.

certificate, the order theretofore made by the judge shall become a final order and such patient shall thereafter remain in such institution, or any other institution to which he may be transferred, until his discharge in accordance with the provisions of this chapter." (L. 1946, ch. 731.)

The procedure providing for a preliminary period of observation and the filing of a certificate upon the basis thereof by the director was introduced into the statute by chapter 655 of the Laws of 1944. Prior to that time, the Judge was authorized to issue a final order of commitment upon the basis of the petition and the certificate by the two psychiatrists accompanying the petition, and such further proof as he might require upon a hearing, if a hearing was requested or if one was ordered by the Judge upon his own motion. No certification by the Director of the State hospital was required in order to make the Judge's commitment order final.

A Moreland Act Commission was appointed by Governor Dewey on May 26, 1943, to make a complete survey of the operation of the Department of Mental Hygiene. The commission made a report in 1944, entitled The Care of the Mentally Ill in the State of New York. At pages 94 to 96 of the report, the commission recommended certain procedural changes in the admission of patients to State hospitals. The commission pointed out that, under the existing procedure, the patient was stigmatized by the order of commitment as having been finally committed to a State mental hospital for an indeterminate period, even though the order might be "followed by a discharge within a relatively short time" (p. 95). The commission continued: "To correct this situation it is recommended that the Law be amended to provide that a Judge may, in his discretion, certify a patient 'for observation' to a State mental institution for a period not to exceed sixty days" (p. 95). "Within that time the hospital should either discharge the patient or make application for a final order of certification" (p. 96). The statute adopted upon the recommendation of the commission (L. 1944, ch. 665), as appears from the quotation above, deviated slightly from the text of the recommendation in the report, by dispensing with the requirement of an application to the court for an additional order and by providing that, upon the filing of the certificate by the director of the institution that in his opinion the patient was in need of continued care and treatment, the original order made by the Judge should "become a final order" and the patient should be indefinitely confined until discharged in accordance with law (Mental Hygiene Law, § 74, subd. 7).

It may be noted that the words "shall become a final order" in the 1944 revision of the statute refer, not to any express provision of the Judge's order, but to a provision implied therein by force of the statute. The statute, as amended in 1944, does not provide for any express direction in the Judge's order authorizing the indefinite confinement of the patient but, under the statutory scheme, a provisional direction to that effect (subject to confirmation by the director) must necessarily be read into the order. It is this implied part of the order which, under the statute, is to become final, upon the filing of the director's certificate.

Changes in the terminology used in the Mental Hygiene Law were also made in 1944 upon the recommendation of the commission. The word "commitment" was said to smack "of criminal proceedings rather than medical treatment" (report, p. 94) and the less objectionable word "certification" was substituted. Furthermore, the word "insane" was replaced by the more euphemistic term "mentally ill" throughout the statute and the word "parole" was replaced by the words "convalescent status" (report, pp. 95–96; L. 1944, chs. 665, 666, amending numerous sections of the Mental Hygiene Law). Similar changes

were made in the statutes of other States for substantially the same reasons (see Analysis of Legal and Medical Considerations in Commitment of the Mentally Ill, 56 Yale L. J., 1178, 1197–1200).

The primary purpose of the 1944 revision, as indicated by the report of the commission quoted *supra*, was to require confirmation of the Judge's determination by the director of the institution, before the stigma of a final commitment or, as it was to be called, a final certification, was inflicted upon the patient. The determination to be made by the Judge under the new procedure, in the first instance, was substantially the same as the determination required to be made under the former statute, except for the change in terminology. The proof required to be presented to the Judge remained the same. Further proof was to be taken at a hearing, if one was requested by an interested person or if the Judge ordered one to be held on his own motion. The new procedure, however, took account of the fact that the Judge had necessarily acted without the benefit of the views of a psychiatrist who had had an opportunity to observe the patient for a substantial period of time. The implied direction in the Judge's order, authorizing the indefinite confinement of the patient, was therefore declared to be a provisional one, pending the certification by the director of the institution upon the completion of the period of preliminary observation. If the director of the institution decided that the patient was not mentally ill, he was to discharge him (Mental Hygiene Law, § 74, subd. 8). (Incidentally, it may be noted that the only provision for the filing of a certificate of discharge is to be found in section 87 of the Mental Hygiene Law, which provides for the filing of the certificate only with the Department of Mental Hygiene.) On the other hand, if the director found that the patient was mentally ill and was in need of continued care and treatment, he was required to make a certificate to that effect and to file the certificate in the County Clerk's office (Mental Hygiene Law, § 74, subd. 7).

The making of the determination by the director within the 60-day period was the essence of the new procedure. The determination by the director was the heart of the matter. The filing of the certificate in the County Clerk's office was merely the mechanical method of making a record of his determination in the judicial proceeding. The provision that the certificate was to be filed within 60 days was merely the method of expression chosen by the draftsman to convey the basic idea that the determination must be made within 60 days and that evidence of it should be filed in the proceeding. The filing requirement was only a " detail of procedure " (*Lambert* v. *Lambert,* 270 N. Y. 422, 426).

If the determination is actually made and the certificate is signed within the 60-day period, the substance of the statutory requirement has been complied with. Delay in filing the certificate is then a mere " irregularity or defect " which may be corrected and, under the statute, " if a substantial right of any party shall not be thereby prejudiced, such * * * irregularity or defect must be disregarded " (Civ. Prac. Act, § 105; see, also, § 109; *Lambert* v. *Lambert, supra*; *Valz* v. *Sheepshead Bay Bungalow Corp.,* 249 N. Y. 122).

The exact date of the filing of the certificate by the director of the State hospital is not a matter of intrinsic importance under the statutory scheme; there is no provision in the statute for the service of notice of the filing of the certificate upon the patient or anyone else. As a matter of fact, the precise date of filing is generally not known to the patient or his family. The papers in the proceeding are sealed and may be exhibited only " upon order of the court " (Mental Hygiene Law, § 74, subd. 6). " It is doubtful that the cautious County Clerk, in the absence of a court order, would reveal to the patient or his relative or friend whether the certificate had been filed " (*Matter of Coates,* 8 A D 2d 444, 449).

In this situation, it is apparent that a delay in the filing of the certificate cannot cause any prejudice to the patient in a case in which the determination that he was in need of continued care and treatment had actually been made within the 60-day period, as it was in this case. In fact, a delay in the filing of the certificate has the effect of extending the time within which a mandatory review, including the right to jury trial, may be had under section 76 of the Mental Hygiene Law. The final date upon which a patient may normally institute a review proceeding is the 90th day after the date of the Judge's order; this is determined by adding the 60 days provided for observation under section 74 to the 30 days provided for review under section 76 (*Matter of Coates, supra*). If a certificate is made within the 60-day period but is filed thereafter, the time to institute the review proceeding is extended to 30 days after the date of the delayed filing. The final date upon which a review proceeding could have been instituted in the present case was, therefore, extended to 95 days after the date of the Judge's order.

As has been indicated, the substance of the statutory requirement is that the director make a determination within 60 days whether the patient should be discharged or should be held for an indefinite period. The time limitation is of the essence of this requirement since it deals with the liberty of the patient. On the other hand, the requirement that the certificate be filed within 60 days is, under the general principle of law applicable to the acts of public officers, merely directory; and failure to act within the specified time does not terminate the officer's power to act. "As a rule a statute prescribing the time within which public officers are required to perform an official act regarding the rights and duties of others * * * is directory unless it denies the exercise of the power after such time * * * or the nature of the act to be performed, and the consequences of doing or failing to do it at such time are such that the designation of time must be considered a limitation on the power of the officer" (67 C. J. S., Officers, § 114, pp. 404–406). "It is a fundamental principle that the limitation of the time within which a public body is to act does not oust it of jurisdiction to act after the expiration of that time * * * 'unless the nature of the act to be performed, or the language used by the legislature, show that the designation of the time was intended as a limitation of the power of the officer'" (*Matter of Rochester Gas & Elec. Corp.* v. *Maltbie*, 272 App. Div. 162, 165–166).

There are no "negative words" in section 74 expressly forbidding the filing of the certificate after the expiration of 60 days, nor is the time of filing of such intrinsic importance that a termination of jurisdiction is to be implied (*Fallon* v. *Hattemer*, 229 App. Div. 397, 400). As we have seen, the primary purpose of the statute is to require a determination by the director within the 60-day period. Once the determination has been made, the filing of the certificate is a procedural or ministerial matter; it is not of such a character as to make a delay in filing fatal to the validity of the whole proceeding. "The act of filing was a ministerial duty * * * the command [to file] was merely directory, so that an inadvertent failure to comply would not be fatal" (*Harman* v. *Board of Educ. of City of N. Y.*, 300 N. Y. 21, 30).

It is well settled in judicial proceedings generally that, if an act has been performed within the time specified by law, failure to file proof of the performance of the act within the required time may be corrected *nunc pro tunc* or, in an appropriate case, the delay in filing the proof may be disregarded (*Lambert* v. *Lambert*, 270 N. Y. 422, *supra*; *Michaud* v. *Lussier*, 6 A D 2d 746, affd. 7 N Y 2d 934; *Cornell* v. *Cornell*, 7 N Y 2d 164; *Hehn* v. *County of Nassau*, 268 App. Div. 917). "When a ruling has in fact been made but is improperly

evidenced by a defective mandate, or by no mandate at all, an appropriate and suitable order or judgment which manifests the existence of a determination may subsequently be granted to take effect as of the date of such determination" (*Merrick* v. *Merrick,* 266 N. Y. 120, 122).

In this case, the "ruling" had in fact been made within the required time; there was merely a failure to file the evidence of it in time. This failure "was an omission to perform a ministerial act", which may be corrected *nunc pro tunc* (*Cornell* v. *Cornell,* 7 N Y 2d 164, 168, *supra*).

Under these authorities, in determining the validity of the relator's confinement, the delay in filing the certificate in this case should be disregarded or the certificate should be deemed to have been filed, *nunc pro tunc,* on the 60th day after the date of the Judge's order.

It may be assumed that the habeas corpus proceeding was brought by the relator as a first step looking toward the making of a claim against the State for damages for false imprisonment, following the pattern of *Alfenbaum* v. *State of New York* (6 A D 2d 988, affd. 6 N Y 2d 736). The *Alfenbaum* case is greatly relied upon by the relator's counsel but this case is distinguishable from the *Alfenbaum* case upon two grounds: (1) in the *Alfenbaum* case, no appeal had been taken from the order of the Special Term sustaining the writ of habeas corpus. Therefore, in the false imprisonment case, the illegality of the claimant's detention was established as a matter of law under the principle of *res judicata* and the courts were powerless to inquire into it (cf. *Post* v. *Lyford,* 285 App. Div. 101; *Nastasi* v. *State of New York,* 194 Misc. 449, revd. on other grounds 275 App. Div. 524, affd. 300 N. Y. 473; 25 Am. Jur., Habeas Corpus, § 157; 39 C. J. S., Habeas Corpus, § 104, pp. 697–698). In this case, the question of whether the writ was properly sustained has been raised by direct appeal. (2) In the *Alfenbaum* case, the certificate by the director of the hospital had not been made within the 60-day period. As appears from the record in that case, the certificate was dated and sworn to after the expiration of 60 days from the date of the order. In the present case, the certificate was signed and sworn to before the 60-day period had expired. The irregularity or defect in this case consists solely of the failure to file the certificate within the 60-day period. This irregularity or defect caused no prejudice to the relator and, under the authorities cited, it was not fatal to the validity of the proceeding. It should therefore be held that the relator was lawfully confined in the custody of the State hospital.

The order appealed from should be reversed, the writ dismissed and the relator remanded to the custody of the hospital.

All concur, except Halpern and Henry, JJ., who dissent and vote to reverse, in an opinion by Halpern, J., in which Henry, J., concurs. Present — Bastow, J. P., Goldman, Halpern, McClusky and Henry, JJ.

Order affirmed, with $50 costs and disbursements.