OPINION OF THE COURT
Oscar Murov, J.
This is an action pursuant to article 15 of the Real Property Actions and Proceedings Law to determine title to a parcel of land located in the Town of Brookhaven, Suffolk County, New York. A trial was had on this matter after which the respective parties filed briefs.
the facts
The New York and Brooklyn Suburban Investment Company, hereinafter referred to as NYB, was a corporation originally organized prior to 1900 and was dissolved by proclamation of the Secretary of State in 1924. During its existence *1081 it purchased substantial parcels of land in the Town of Brook-haven. In its complaint, plaintiff alleges that NYB acquired title of the subject premises from George E. Hagerman and Martha H. Hagerman, his wife, by deed dated May 22, 1891 and recorded on July 6, 1891 in the Suffolk County Clerk’s office in liber 345 of deeds at page 448, therein described as the "9th Parcel” and more particularly described in said deed as follows: "The Ninth tract is bounded on the north by the central line of the Granny Road; on the east by the land of the heirs of Ham Smith, deceased, on the south by a line beginning at the southeast corner of the tract herein described and running westerly along the central line of the Horse Block Road until it comes to the dividing line between lots number 41 and 42; thence following said dividing line northerly to the Middle Island Line; thence following said Middle Island Line westerly to the intersection of the central line of the Horse Block Road and thence following said central line of the Horse Block Road westerly to the line of the heirs of Andrew J. Walker deceased, and bounded on the west by the land of said heirs of Andrew J. Walker, deceased, the tract herein conveyed being the eastern half in width of lot number 40 and the full width of lots number 41 and 42 and all that part of the length of said lots as is comprehended within the aforesaid north and south boundary line, lot number 42 being extended to the Horse Block Road (the numbers of lots herein mentioned having reference to the division of land made by the trustees of Brookhaven town in May 1731) the east and west boundary lines of the tract herein described being straight and parallel to each other and the tract containing about four hundred and eighteen acres. Being the same property conveyed by Catherine Overton and others to George E. Hagerman by deed dated December 4th 1890 and recorded in the Office of the Clerk of Suffolk County April 8th 1891 in Liber 343 page 46.”
The description of the property involved in this action is contained in paragraph six of the complaint and consists of a metes and bounds description which reads as follows:
"all that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being at Medford, in the Town of Brookhaven, County of Suffolk and State of New York, more particularly bounded and described as follows:
"beginning at the northeasterly corner of the described *1082 premises, formed by the intersection of the westerly line of Hagerman Avenue with the southerly line of Fire Road, running thence along the southerly line of Fire Road, the following ten (10) courses and distances:
"South 76 degrees 56 minutes 34 seconds East, 490.93 feet;
"South 74 degrees 06 minutes 34 seconds East, 369.87 feet;
"South 82 degrees 09 minutes 04 seconds East, 615.85 feet;
"South 89 degrees 39 minutes 21 seconds East, 291.79 feet;
"South 87 degrees 26 minutes 52 seconds East, 814.32 feet;
"South 88 degrees 51 minutes 37 seconds East, 833.25 feet;
"North 79 degrees 15 minutes 06 seconds East, 258.63 feet;
"North 72 degrees 03 minutes 15 seconds East, 295.26 feet;
"North 73 degrees 08 minutes 10 seconds East, 303.14 feet;
"North 61 degrees 03 minutes 00 seconds East, 253.81 feet; proceeding thence
"North 06 degrees 16 minutes 00 seconds West a distance of 444.25 feet to a point in the northerly line of the westerly prolongation and extension of Fire Avenue; proceeding thence
"South 84 degrees 31 minutes 06 seconds West by and along the westerly prolongation and extension of the northerly line of Fire Avenue and the northerly side or line of Fire Avenue a distance of 4364.69 feet; proceeding thence
"North 05 degrees 28 minutes 54 seconds West a distance of 5.81 feet; proceeding thence
"South 84 degrees 12 minutes 26 seconds West a distance of 113.99 feet to a point in the westerly line or side of Hagerman Avenue; proceeding thence
"South 05 degrees 55 minutes 09 seconds East by and along the westerly line or side of Hagerman Avenue a distance of 60.09 feet to the point or place of beginning.
"Said premises containing 52.587 acres as shown and described on a certain survey dated December 20, 1974, prepared by Weisenbacher and Schnepf, P.C., land surveyors, West Sayville, New York.”
The descriptions in both the Overton deed mentioned above to Hagerman and the Hagerman deed to NYB are identical. Each deed referred to the fact that the parcel of land that was conveyed contained about 418 acres. Plaintiff’s complaint specifically alludes to a parcel of land containing 52.587 acres. Defendant Leeds claims title to the subject property based upon a tax deed issued to him by the County Treasurer of *1083 Suffolk County upon a sale for unpaid taxes which deed is dated December 23, 1965 and was recorded in the Suffolk County Clerk’s office on December 30, 1965. Defendant Cowan claims title by virtue of a tax deed issued by the County Treasurer to Cowan. By way of background, a tax sale certificate was purchased by Randolph Cowan who subsequently assigned said conveyance to Marvin S. Cowan, Lois L. Cowan, Louis R. Cowan and Ruth L. Cowan. Defendant Cataletto claims title from a deed executed by Ruth McPherson and Virginia Danger recorded January 26, 1971 in deed liber 6875, page 485. It takes its bearing from a southerly line of lot 109 on the map of O. L. Schwenk Land and Development Company, Map No. 329.
Defendant board of education claims a portion of the premises by virtue of the fact that the board of education had adversely acquired said premises under a claim of right and has maintained an educational institution upon part of the premises involved in this action.
The court will treat each claim separately.
LEEDS
Plaintiff relies heavily on the presumptive evidence of ownership as set forth in section 321 of the Real Property Actions and Proceedings Law which provides as follows: "In all actions to recover the possession of, or otherwise to determine the title to, or for trespass upon or injury to, unoccupied lands, timber, trees, or underwood thereon, any party seeking such recovery or determination may show an unbroken chain of title for twenty years, or conveyance of the land to himself more than twenty years next preceeding the commencement of the action or the assertion of the defense or counterclaim except in actions for trespass, and in actions for trespass for twenty years next preceding the commission of the trespass or injury, and such proof shall be presumptive evidence of ownership at the times respectively of the commencement of such action or assertion of the defense or counterclaim or commission of such trespass or injury. Such presumption may be rebutted by any other or opposing party by showing ownership of said lands, at the times respectively of the commencement of the action or the commission of the trespass or injury, in some person other than the party claiming ownership by virtue of such presumption. In any such action wherein the state, or any county or any state officer, board of commission *1084 shall be a party, evidence as aforesaid shall not be deemed to create any presumption of ownership as against said designated parties.”
In this situation, plaintiff claims to have shown an unbroken chain of title in himself for a period well over that required by the statute. Such a showing, therefore, is presumptive evidence of ownership at the time of the commencement of the action (Helterline v People, 295 NY 245; 13 Carmody-Wait 2d, NY Prac, § 86.9, p 419).
Defendant Leeds claims title vis-á-vis a tax deed issued to him by the Suffolk County Treasurer upon a sale for unpaid taxes as noted above. It is claimed that this deed is entitled to a conclusive presumption of validity pursuant to section 53 (L 1920, ch 311, as amd by L 1941, ch 140) of the Suffolk County Tax Act, and, therefore, that it breaks plaintiff’s chain of title and rebuts section 321 of the Real Property Actions and Proceedings Law. Prior to this, however, and in June, 1969 a Marie Erny, a person allegedly in the employ Of defendant Leeds executed a deed by which she purported to convey a two-acre tract of land to said defendant Leeds which property was located in Medford, Suffolk County, New York. Said deed was placed on record and subject property was described as follows: "Northerly and easterly by Fire Road; southerly by Fire Avenue, westerly by land of Perner or Fire Road; containing within said bounds two acres more or less.” (Emphasis supplied.) It appears that said Marie Erny never had title to said premises.
Accordingly, said property was placed on the tax rolls. Leeds did not pay the taxes and consequently the property was advertised for unpaid taxes. Leeds then bought in the tax liens for three years: 1961-1962, 1962-1963, 1963-1964. In December, 1965 Leeds received a county treasurer’s tax deed for two acres described as: "Bounded North and East by Fire Road, South by Fire Avenue, West by Perner Fire Road, 2 acres.”
Interestingly enough, in the 1964-1965 assessment roll said tract is described with the same boundary but yet its acreage listed as 20 acres and the taxes thereon almost 10 times the amount of taxes for the previous tax period imposed.
No proof was offered to explain this discrepancy. On the third day of the trial of this action, plaintiff’s attorney conceded in open court that it had discovered that it did not in fact have title to approximately one half of the parcel to *1085 which it claims title. This concession came after much testimony was elicited. Defendant’s counsel contends that plaintiffs proof should, therefore, be totally unacceptable. It was also demonstrated that one of plaintiffs witnesses had a monetary interest in the outcome of this action. Finally, it is claimed that plaintiff has never paid real estate taxes on the parcel to which it claims title and, therefore, it should be estopped to assert ownership. It is at this point that the court should state its role in situations such as this. An action to compel determination of a claim to real property brought under article 15 of the Real Property Actions and Proceedings Law is a statutory action. A plaintiff must, by pleading and proof, bring this action within the terms and conditions of statute. But beyond this, and in respect of the distinction between an action at law and an action in equity, the action is a hybrid one. It has been said that it is not an action in equity and the relief awarded is in large measure equitable in nature. In a situation such as this, the court will open its equitable umbrella over the parties and determine the rights and liabilities of each.
Section 53 of the Suffolk County Tax Act (L 1920, ch 311, as amd by L 1967, ch 26) provides: “Every such conveyance shall be attested by the county treasurer and the seal of the county treasurer attached thereto, and when so executed shall be presumptive evidence that the sale was regular, and also presumptive evidence that all proceedings prior to the sale, including the assessment of the lands sold, and all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and according to law. After three years from the date of record of any such conveyance in the Suffolk county clerk’s office, such presumption shall be conclusive.”
Therefore, the questions that come to mind for resolution by this court are (1) does section 53 of the Suffolk County Tax Act (L 1920, ch 311, as amd by L 1941, ch 140) bar an attack against a tax deed which came about because of a spurious deed? (2) does section 53 of the Suffolk County Tax Act bar attack against a tax deed which came about because of defects in the assessment procedure?
Defendant Leeds’ contention is that a tax title is inviolate and that section 53 of the Suffolk County Tax Act is a restatement of this principle. But, as my learned colleague, Justice Geiler, in an unreported Supreme Court case of Dinos *1086 v Gazza (Index Nos. 76-18257 and 76-18860) pointed out, the Court of Appeals considered these questions in the case of Werking v Amity Estates (2 NY2d 43, at p 49), by saying:
"What we must determine is whether this noncompliance rendered the tax deed void.
"In approaching that question we bear in mind the principle which is so well stated in Cooley on Taxation (2d ed. [1886], p. 470): 'Tax sales are made exclusively under a statutory power * * *. The officer who makes the sale sells something he does not own, and which he can have no authority to sell except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action, and which, under the law, are conditions to his authority. If these fail the power is never created. If one of them fails it is as fatal as if all failed. Defects in the conditions to a statutory authority cannot be aided by the courts; if they have not been observed the courts cannot dispense with them, and thus bring into existence a power which the statute only permits when the conditions have been fully complied with. * * * It is therefore accepted as an axiom when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance with the law in all the proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings; but special reasons make it peculiarly applicable to the case of tax sales.’ (See, also, Lockwood v. Gehlert, 127 N.Y. 241, 248; Neber v. Hatch, 10 Abb. N.C. 431, affd. on opinion below 88 N.Y. 657; Saranac Land & Timber Co. v. Roberts, 208 N.Y. 288, 311; Helterline v. People, 295 N.Y. 245, 251; McKinney’s Consol. Laws of N.Y., Book 1, Statutes, § 313, pp. 356-357).”
Justice Geiler went on to point out that the Court of Appeals also had the opportunity to discuss the effect of section 53 in the case of Cameron Estates v Peering (308 NY 24). The Court of Appeals, in overruling the Appellate Division, stated (p 29) that the latter tribunal had: "Read section 53 of the Suffolk County Tax Act (added by L. 1929, ch. 152 as amd. by L. 1941, ch. 140) as a valid Statute of Limitations, barring the assertion by the plaintiff of jurisdictional defects leading to the tax sale as to the two deeds recorded six years or more prior to the commencement of the action (Cameron *1087 Estates v. Deering, 281 App. Div. 985). In so ruling, the Appellate Division erred as a matter of law.”
The Court of Appeals in reaching its decision that section 53 was never intended to apply to jurisdictional defects stated the following reasons for its view (p 29): "Here the right to sell the plaintiffs property in foreclosure proceedings for nonpayment of the taxes never existed. Delinquency in payment of the taxes is a condition precedent to the commencement of such a proceeding and when paid, the right to foreclose for nonpayment ceases (Joslyn v. Rockwell, 128 N.Y. 334). The plaintiff was not made a party to such wrongfully taken proceeding and may not now be penalized for failing to assert his true ownership within six years from the recording of the void tax deed. Such recording was a nullity and did not set the statute running at all (People v. Inman, 197 N.Y. 200). The holding in Bryan v. McGurk (200 N.Y. 332), relied on in the Appellate Division, as we read it, was wrongly applied when they held that the limitation of section 53 related to void deeds. A Statute of Limitations is one of repose designed to put an end to stale claims and was never intended to compel resort to legal remedies by one who is in complete enjoyment of all he claims (Cooley on Constitutional Limitations, p. 366), nor may it be used to transfer property from the true owner to a stranger simply because the void tax deed was not challenged within six years from the date of recording (Cromwell v. McLean, 123 N.Y. 474). Courts in sister States have applied the same principle (Campbell v. City of Plymouth, 293 Mich. 84; Warren v. Indiana Tel. Co., 217 Ind. 93) which is reflected by leading text writers (3 Cooley on Taxation [4th ed.], § 1382; Blackwell on Tax Titles [5th ed.], § 155, and Burroughs on Taxation, p. 301).” (Cameron Estates v Deering, 308 NY 24, 30-31.)
Section 53 of the Suffolk County Tax Act as discussed in Cameron was identical to the present context except for the date periods within which the conclusive presumption would operate a vis-á-vis tax deed. In the case at bar the time period is three years; at the time of the Cameron decision it was six years.
Accordingly, I hold the Statute of Limitations, namely, section 53, is only applicable where the defects in the assessment proceeding which resulted in a tax deed are mere irregularities. Where the defects are jurisdictional in nature, and where it can be said that there has been fraud against the *1088 taxing authorities, section 53 is not an unassailable Statute of Limitations. Subdivisions 1 and 2 of section 502 and subdivision 4 of section 504 of the Real Property Tax Law set forth the property standards as follows:
"§ 502. Form of assessment roll.
"1. The form of the assessment roll shall be prescribed or approved by the state board, in accordance with the requirements contained in this section.
"2. Provision shall be made with respect to each separately assessed parcel of real property for the entry, in appropriate columns, of the name of the owner, last known owner or reputed owner and a description sufficient to identify the same, including the surnames of the abutting property owners and the names of the abutting streets or highways, the approximate number of square feet, square rods or acres contained therein or a statement of the linear diminsions thereof. When a tax map has been approved by the state board, reference to the lot, block and section number or other identification numbers of any parcel on such map shall be deemed a sufficient description of such parcel.”
"§ 504. Preparation of assessment roll. * * * 4. If in the preparation of the roll an error or omission is made in the description of a parcel of real property or in entering or failing to enter the name of the owner, last known owner or reputed owner, such error or omission shall not prevent the levy, collection and enforcement of the payment of the taxes thereof if the parcel can be identified and located with reasonable certainty.”
The statutory requirement with reference to the property description in an assessment roll can be summed up in the following equation: proper description equals identification and location of the parcel with reasonable certainty. The failure of the taxing authorities to follow this formula and the resultant laws of property by an owner amounts to a violation of due process of law. (Kiamesha Dev. Corp. v Guild Prop., 4 NY2d 378; see, also, Helterline v People, 295 NY 245, supra, át p 251.)
The case law of this State leaves no doubt that the description requirements of the statute must be strictly adhered to and an insufficient description constitutes a jurisdictional defect. Each case, of course, must be separately examined to ascertain whether the description properly identifies the property. There is no explanation as to how a two-acre parcel *1089 suddenly becomes a 20-acre parcel and indeed the description offered does not close and leaves open the possibility that the parcel in question may even be more than 20 acres.
Also, the court is most concerned by defendant Leeds’ source of title. There is no doubt that plaintiff’s proof is weak. Plaintiff’s attorney even conceded in open court that, after much testimony, plaintiff had discovered that he did not have title to a good portion of the parcel in question. This, however, does not destroy plaintiff’s case, but only goes to the credibility of his witness.
Based upon the foregoing, the court determines that defendant Leeds has no title to the subject premises.
COWAN
Plaintiff’s complaint alleges that on November 23, 1970 a tax lien for a parcel described as follows: "North by Fire Road; East by Hagerman Avenue; South by Fire Avenue; West by Leeds” and consisting of 52.09 acres, was sold and the tax sale certificate given to four individuals. Thereafter, and while this action was pending, a deed dated May 11, 1976 was issued by the county treasurer to defendant, Cowan. The 1969-1970 tax assessment roll describes the property as owned by Berndale Associates, Inc. The description thereon is taken from a deed made by Frances Frisch, grantor, to Berndale Associates, Inc., grantee. Said deed describes the property fully, using metes, bounds and bearings. Randolph Cowan purchased the tax liens for 1969-1970, 1970-1971 and 1971-1972, received a county treasurer’s deed on May 11, 1976, which deed contains the same description noted above. When one examines this description noted above, there is no conclusion as to where the southern boundary stated thereon, "Main St. Ch” is to be found. As to the boundary "K. Leeds”, since it has been established heretofore that defendant Leeds had no title to the property he claimed to own, or even if it could be proven that he had two, 20 or 52 acres, the court finds that the tax deed to Cowan is void for misdescription. It should be noted that said deed has not yet attained the status of being entered to a conclusive presumption of validity pursuant to section 53 of the Suffolk County Tax Act since three years had not expired from the date of its recording prior to the commencement of the action. As to the presumption of the regularity of the tax sale, the court holds that it has been rebutted. There has been no gap in plaintiff’s alleged chain of title created by the tax *1090 deed which erroneously describes defendant Cowan’s property (cf. Harbor Assoc. v Asheroff, 35 AD2d 667).
CATALETTO
Little evidence was offered to establish Cataletto’s title to any portion of the property in question (the 20-acre parcel). As will be determined later, the presumption of ownership established in section 321 of the Real Property Actions and Proceedings Law clearly outweighs proof of a claim of ownership by said defendant, Cataletto.
BOARD OF EDUCATION
The defendant board of education claims title to the entire width of Fire Avenue which abuts its property as shown in plaintiff’s exhibits numbered 1 and 8. It claims title by deed dated November 17, 1964 from Eagle Estates. By stipulation between counsel for both sides, it was agreed that the installation of a fence enclosing the entire Fire Avenue, was commenced on or about November 5, 1965. The school board was served with summons and complaint in this action on April 23, 1975, approximately nine and one-half years after the installation of the fence. It is true that the exact 10-year period required for an assertion of a claim of adverse possession was not completed at the time of the commencement of the action; however, unlike defendants, Leeds and Cowan, the board of education in this situation is in a position of an innocent purchaser for value and does not derive its title from a tax deed. Furthermore, it has made permanent improvements to the property and to now cause the board of education to lose the property and withdraw its improvements to same would be most oppressive. Furthermore, the property is being used to benefit the public at large.
Despite the absence of the required period for adverse possession, equitable rules are capable of expansion to meet the prevailing canons of justice. Rigidity and strictness, close and technical construction, do not prevent the power of equity from being exercised to prevent injustice. (20 NY Jur, Equity, § 65.) Accordingly, the court will exercise its equitable powers in favor of this public body, the board of education, and find title of that portion of the property which it claims to be in it.
*1091 NYB
The court has already noted the lack of title, except for the portion of the property claimed by the board of education, in the defendants. Accordingly, the court holds that there has been no break in the chain of title of plaintiff and, therefore, since there is an unbroken chain of title of plaintiff for well over 20 years prior to the commencement of the action, the court holds that plaintiff is the underlying fee owner of the 26 acres to which it ultimately claimed title, this, notwithstanding the weak proof offered by plaintiff (Real Property Actions and Proceedings Law, § 321).
There is, however, another problem to which the court wishes to address its attention. The record reflects that the corporate life of NYB was revived in 1972 and that the action was commenced in 1975. The court also noted that NYB has not paid taxes on the property in question for well over 50 years and has not paid any taxes to the present date. Other persons have in fact paid the taxes for a period of years. In the landmark case of Mabie v Fuller (255 NY 194), the Cardozo court enunciated the cardinal principle that: "Everyone is presumed to know the Tax Law and to know that his land is being assessed and can be sold for non-payment of taxes and it is the duty of a landowner to see to it that the taxes upon his land are paid within the statutory time. If he fails for any reason the law still gives him in the case of occupied land three years from the last day of the sale within which to redeem. That is a reasonable time and if he fails to redeem within that time public policy requires that the grantee’s title become absolute.”
Equity is to provide a remedy rather than suffer a wrong to be without a remedy. (20 NY Jur, Equity, § 79.) Equity will adapt established rules to any situations and grant relief even though a case is novel and there is no precise precedent for the relief to be granted where grounds causing for the exercise of equitable powers to furnish a remedy exist. When called upon to exercise equitable powers courts of equity are not so incompetent or so powerless as to be unable to cope with the ingenuity of the cunning and the astute, and with the inertia of others. The rules of equity are susceptible of necessary expansion to reach new conditions in order that the court may make an adjudication which good conscious demands (20 NY Jur, Equity, § 83).
Accordingly, the court directs that the plaintiff pay the *1092 defendant, Cowan, the sum of $17,557.24 plus interest at the legal rate from the time he paid taxes on said property to the date of the entry of the judgment to be entered herein. The court further directs that plaintiff pay to defendant Leeds the sum of $13,835.94 on the same terms and conditions. Said sums represent the taxes paid on that portion of the property which the court determines to be in plaintiff. The reason the court does this is as follows:
As to defendant, Leeds, the court feels that the property described in the tax deeds to Leeds is a portion of the property claimed by plaintiff. The court, however, in balancing the equities has found that title is not in Leeds because of a spurious deed and misdescriptions of the property but, therefore, it feels that even though title to said property is not in Leeds, he did pay taxes on the property in question while plaintiff sat back and did nothing, and, accordingly, defendant Leeds should be reimbursed.
As to defendant, Cowan, the court feels that the property on which Cowan paid taxes was a portion of the property to which plaintiff claims title. However, the description of the property on the assessment rolls was not such a proper description as to properly put plaintiff on notice of a sale of said property and, therefore, plaintiff should not be caused to lose its title thereto. However, as noted in Mabie v Fuller (supra) it is presumed to know the Tax Law and should not be allowed to benefit from Cowan’s paying taxes on it. Accordingly, reimbursement is likewise directed.
Said sums are to be paid within 60 days from the entry of the judgment to be submitted herein.
The foregoing constitutes the decision of the court and all motions upon which decision was reserved at trial are resolved accordingly.